SALLIE ACOSTA, *Plaintiff in Error,* v. MARY F. GINGLES, MINNIE HOWARD AND HER HUSBAND, LAMAR HOWARD, *Defendants in Error.*

Opinion Filed June 26, 1915.

In an action of ejectment involving a boundary line where it appears that the line was agreed upon between the parties as a division line between their properties, which had been given to them by their father who himself established the division line between them; that a settlement was made between the parties upon a valuation based upon the two portions into which the dividing line divided the original property; that such line was acquiesced in and recognized by the parties for twenty-five years as the dividing line between their properties and together they erected and maintained a division fence on the said line for nearly that entire period. *Held*: that such line was binding between the parties as having been established by acquiescence and recognition.

Writ of error to Circuit Court, Escambia County; J. Emmet Wolfe, Judge.

-Judgment affirmed.

*Blount & Blount & Carter* and *R. P. Reese,* for Plaintiff in Error;

*Watson & Pasco,* for Defendants in Error.

ELLIS, J.—The plaintiff in error instituted an action of ejectment in the Circuit Court for Escambia County against the defendants in error to recover the north twenty-seven feet of the south half of block two hundred and two in the corporate limits of the City of Pensacola as per plan of Lee and Harding.

The defendants below pleaded the general issue, and denied possession of the premises. The plaintiff joined issue upon these two pleas, and upon a trial there was a verdict and judgment for the defendants.

There have been two trials of this case. At the first trial there was a verdict for the plaintiff, but the verdict was set aside by the trial court, and that order was affirmed by this court. Acosta v. Gingles, 65 Fla. 507, 62 South. Rep. 582.

At the second trial the court directed a verdict for the defendants. The testimony upon the two trials was in all respects the same, so the attorneys for the plaintiff in error assert in their brief.

Block two hundred and two in the City of Pensacola according to a map of the Lee and Harding survey is a plot of ground lying between thirteenth street on the south and fourteenth street on the north, tenth avenue on the west and eleventh avenue on the east. There is nothing in the record to show when this survey was made. Prior to the Lee and Harding survey, however, the tract of land of which block two hundred and two now forms a part, had been divided into Arpent Lots according to

a plan known as the Shackleford plan, of these Arpent Lots those numbered 211, 212, 217, 218, 227 and 228 lay between 10th avenue and 11th avenue and south of 14th street, and extended across thirteenth street between the above named avenues, so that a line dividing the north half of the above numbered Arpent Lots from the south half would fall about thirty-five feet south of the south boundary line of Block 202 according to the Lee and Harding plan. In the Shackleford plan there was no street where 13th street is shown in the Lee and Harding plan. The blocks in the Shackleford plan were practically twice as large as they are shown to be in the Lee and Harding plan.

In May, 1879, Peter Knowles conveyed by deed to T. W. Hutchinson the "Northern half of a certain parcel designated in a plan known as Shackleford plan of Shackleford tract as Arpent number two hundred and eleven, two hundred and twelve, two hundred and seventeen, two hundred and eighteen, two hundred and twenty-seven and two hundred and twenty-eight, the other half of said six arpents having been released to Pensacola City Company by George G. McWhorter, said parcel of land now conveyed being further described as follows: Begin at a point about forty feet southwest of the southwest corner of square two hundred and two, according to plan of New City made by Lee & Harding and extending eastwardly on a line parallel with the south line of said square two hundred and two to a point about forty feet southwest of the southeast corner of square two hundred and two, thence north on a line parallel with the east line of square two hundred and two to a point about forty feet southwest of northeast corner of said square two hundred and two, thence west on a line parallel with the north line

of square two hundred and two to a point about forty feet, southwest of northwest corner of square two hundred and two, then on a line south to the beginning, being the parcel of land now embraced in the enclosures of the said T. W. Hutchinson in the northern suburbs of Pensacola and lately within its corporate limits in county of Escambia."

There has been no change in the south line of this enclosure; the west line fence is still in the same place. Prior to the date of the above mentioned deed, on March 31st, 1879, T. W. Hutchinson and wife conveyed to Sallie Acosta a parcel of land in the southwest corner of the said enclosure fronting ninety feet on the west by one hundred and fifty feet on the south particularly described as follows: "Begin at southwest corner of enclosure now owned and occupied by T. W. Hutchinson, said corner being near southwest corner block two hundred and two, New City Tract, according to survey Lee & Harding, running thence north ninety feet, thence east one hundred and fifty feet, thence south ninety feet, thence west one hundred and fifty feet to beginning."

The south line of fence forming part of the Hutchinson enclosure is the true middle line of the Arpent or Shackleford plan, and part of which formed the southern line of the lot conveyed by Mr. Hutchinson and wife to Mrs. Acosta.

Mrs. Mary F. Gingles, Mrs. Hattie A. Roberts and Mrs. Sallie A. Acosta are daughters of Mr. T. W. Hutchinson, who on the 14th day of October, 1887, conveyed to them his land in this locality according to the following description: "Parcel in Limits New City as per plan Lee & Harding Block two hundred and two less therefrom ninety feet by one hundred and fifty feet of the southwest

corner thereof heretofore conveyed by T. W. Hutchinson to Sallie A. Acosta by deed dated March 31st, 1879." At this time, so Mrs. Acosta testifies, "there were really no streets out there, it was merely in the country and many people had streets fenced in." The conveyance of the property was a gift from Mr. Hutchinson to his daughters, who agreed among themselves upon a division of it. Mr. T. W. Hutchinson calling in three men to make a division of it among his daughters. These men made their report in writing on the 15th day of October, 1887. The report is as follows: "After viewing and valuing the lots and improvements, we think the best divisions of the interest will be made by dividing the original lots by a line running East and West from the middle point of the Western line, and running parallel with the Northern and Southern line, and we assess the value of the South side vacant lot at Five Hundred dollars, and the North side, with all improvements thereon, at Two Thousand seven hundred and fifty dollars.

(Signed) William Tate
Oct. 15th, 1887.         A. V. Clubbs
                        Wm. F. Lee."

The daughters agreed among themselves that Mrs. Acosta should take the south side vacant lot, Mrs. Gingles the north side and Mrs. Roberts to receive her portion in money. Accordingly Mrs. Gingles and her husband paid to Mrs. Roberts $1083.33 and to Mrs. Acosta $583.33, making a total of $1666.66, which represented the excess over her one-third interest which she received by taking the north side of the lot.

After the division of the property was made Mr. T. W. Hutchinson located the division fence dividing the north side from the south side, and on October 17, 1887, Mrs.

2

Sallie Acosta and her husband and Mrs. Hattie A. Roberts and her husband conveyed to Mrs. Mary F. Gingles "All right, title and interest in north half of said block two hundred and two as above acquired by us from T. W. Hutchinson by deed aforesaid, dated October 14th, 1887;" and on the same day Mrs. Mary F. Gingles and husband and Mrs. Hattie A. Roberts and husband conveyed to Mrs. Sallie A. Acosta "All right, title and interest in the remaining south half of said block two hundred and two as above acquired by us from said T. W. Hutchinson by deed aforesaid of October 14th, 1887." Both deeds recited the making of the deed dated October 14th, 1887, from Thomas W. Hutchinson to Mrs. Acosta, Mrs. Gingles and Mrs. Roberts, and that such deed conveyed block two hundred and two in the corporate limits of Pensacola in New City as per plan of Lee and Harding, less therefrom ninety feet by one hundred and fifty feet of the "south corner thereof before conveyed to Mrs. Sallie Acosta by deed dated March 31st, 1879, from said T. W. Hutchinson." When the division line was established by Captain Hutchinson, which was shortly after he gave the property to his daughters, Mr. Gingles and Mr. Acosta built a line fence on the line located by Captain Hutchinson each paying half the cost. This line fence has remained and been recognized by the parties principally interested in the case from the date of its erection, as the division line established by their father, and as the line according to which the division of the property was made between the sisters and the valuation of the two parcels was made into which the property was divided, until about the date of the institution of this suit, when Mrs. Acosta decided to divide her property between her sons.

This fence, which marks the original line as estab-. lished by Captain Hutchinson, when he gave the property to his daughters, is about twenty-seven feet south of the middle east and west line of block 202 according to the Lee and Harding plan, and the intervening strip of land is the bone of contention between the sisters in this litigation.

The court below instructed the jury to return a verdict for the defendant, and in so instructing the jury we think there was no error. The evidence as shown by the record in this case would not have sustained any other verdict than that which the court directed the jury to return. There is nothing to show that there was any mistake in the location of the dividing line by Captain Hutchinson, even if he merely stepped it off, his measuring of the distance was as accurate as if he had used a tape measure. According to the witness Mr. Stephen Lee, a civil engineer, the fence line is for all practical purposes half way between the north and south lines of the Shackleford survey. The south fence of the Hutchinson enclosure, which is now the south fence of Mrs. Acosta's enclosure is on the line dividing the north half from the south half of the Arpent lots according to the Shackleford survey. Mrs. Acosta's enclosure has remained the same so far as the northern and southern lines thereof are concerned, since the division between her and her sisters, twenty-five years before the institution of this suit.

The testimony of Mrs. Gingles to the effect that the property was a gift from her father to her and her two sisters is concurred in by Mrs. Acosta. The further testimony of Mrs. Gingles that Mrs. Acosta was to get half of the original lot, and Mrs. Roberts was to take her portion in money; that they selected Mr. Tate, Mr. Clubbs and

Mr. Lee to divide the property; that the settlement was made in the presence of the three men selected by the sisters jointly to divide the property; that Captain Hutchinson located the fence; that Mr. Frank Lee, a surveyor, located the lines at Captain Hutchinson's suggestion, and that the division fence was built shortly after, within a year, by Mr. Acosta and Mr. Gingles, husbands of the two sisters, each paying half the cost; that Mr. Lee was one of the persons selected to divide the property; that the fence as it now stands is exactly on the same line as located by him; that a larger part of the material of the orinigal fence is there now; that for fourteen years during the life of Mr. Hutchinson after the division no claim was made by anyone to the property in dispute, other than Mrs. Gingles, is undisputed.

It is not a question of mistaken boundary, nor adverse possession. The facts establish clearly, unmistakably, that Captain Hutchinson presented to his daughters the parcel of land embraced within his enclosure, the south line of which was the dividing line between the north and south halves of the Arpent lots, the north line of his enclosure being about twenty feet south of the south side of fourteenth street. This enclosure was divided by running an east and west line from the middle point of the western line and running parallel with the northern and southern line. Valuations were placed upon the northern and southern sides of the enclosure as divided by that line, a settlement was made on the basis of that valuation, deeds were exchanged between the sisters, a fence was erected on the middle line and all concerned acquiesced in and were satisfied with the division, the

settlement and the line for a quarter of a century, until a new generation grows up.

Here was a case where the survey, or a dividing line was actually run on the ground actually established by the person giving the property, practically in the presence of the beneficiaries of that gift, two of whom are now parties to this suit, certainly with their knowledge and consent, a valuation of the two parts respectively into which the property was divided by that line and a settlement between the parties according to such valuation; the line so established is easily located and proved. We think the evidence establishes most clearly that the line was actually agreed upon between the parties as the permanent boundary line between them; that it was established by acquiescense and recognition. Mrs. Acosta and Mrs. Gingles each knew and understood that the portion she was receiving of her father's enclosed premises was the portion lying south, or the portion lying north, as the case may have been, of that dividing line, a line located by him, who under the circumstances, may be regarded as their common grantor. That being true, the line is binding between the parties. Watrous v. Morrison, 33 Fla. 261, 14 South. Rep. 805; Hess v. Rudder, 117 Ala. 525, 23 South. Rep. 136; Chicago, M. & St. P. R. Co. v. Hanken, 140 Iowa 372, 118 N. W. Rep. 527; Wolf Brick Co. v. Lonyo, 132 Mich. 162, 93 N. W. Rep, 251; Husted v. Willoughby, 117 Mich. 56, 75 N. W. Rep. 279; Bradley v. Burkhart, 139 Iowa 323, 115 N. W. Rep. 597; Meyer v. Perkins, 89 Neb. 59, 130 N. W. 986.

On the question of estoppel the parties may be precluded from disputing the line as established. The valuation of the two parts of the original enclosure into which it was divided by the line, the settlement between the

sisters on that valuation, the taking of possession by Mrs. Acosta and Mrs. Gingles of the portions respectively chosen by them, and the planting of fruit trees thereon, would render it inequitable for either party to ignore the line. Watrous v. Morrison, *supra;* Osteen v. Wynn, 131 Ga. 209, 62 S. E. Rep. 37.

The view which we take of the case renders it unnecessary to discuss the second and third assignments of error, which are based upon the ruling of the court sustaining defendant's objection to a question propounded on redirect examination by the plaintiff's counsel to the witness A. V. Clubbs, as to which plan was used "out there in conveying property at the time of this division of the Hutchinson property," and the refusal of the court to permit Mrs. Gingles to be asked on cross-examination if during all these years she intended to claim the land in dispute if it was her sister's.

There is no question of mistaken boundary nor adverse possession involved. The line was located by the father of these ladies, the property valued and divided between them according to that line and settlement made on such valuation and the line afterwards recognized and acquiesced in for such a great period of time, is binding upon the parties without reference to the calls of the deeds.

The judgment is affirmed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.