THOMAS BOSSOM, *Plaintiff in Error*, v. ALICE M. GILL-MAN, *Defendant in Error*.

Opinion filed Nov. 17, 1915.

1. If a proposed bill of exceptions is duly prepared and presented for authentication within the time allowed, it may afterwards be authenticated as of the day on which it was properly presented.

2. When the proposed bill of exceptions is presented to the judge within the time allowed, "notice of the application for the settling of such bill of exceptions," may be such "as the Circuit Judge may deem reasonable"; and the notice may be given after the time has expired for presenting the bill of exceptions, if the bill was in fact presented within the time allowed.

3. The legal effect of the evidence that is not met by opposing evidence and is not discredited, is a question of law.

4. In cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title will be acquired by a holding for the period of seven years, is the intention of the party holding beyond the true line. If such occupation is by mere mistake and with no intention upon the part of the occupant to claim, as his own, land which does not belong to him, but he intends to claim only to the true line wherever it may be, the holding is not adverse. If, however, the occupant takes possession, believing the land to be his own up to the mistaken line and claiming title to it, and so holds, the holding is adverse.

5. The intent to claim title up to the line is an indispensable element of adverse holding; the claim of right must be as broad as the possession. Simple acquiescence, or lying by without objection, for the statutory period, in case of such adverse holding, will bind the party so lying by to the line, though not the true line.

6. Where the verdict and judgment are contrary to the legal effect of the evidence the judgment will be reversed.

Writ of Error to Circuit Court, Volusia County; Jas. W. Perkins, Judge.

Judgment reversed.

*Stewart & Stewart,* for Plaintiff in Error;

*Landis, Fish & Hull,* for Defendant in Error.

WHITFIELD, J.—In an action of ejectment brought by Mrs. Gillman and Bossom to recover the north 174 feet of Lot 51 A., in Blake Volusia County, there was on a trial upon the general issue, judgment for the plaintiff, and the defendant took writ of error.

Counsel for the defendant in error moved in due time

for an order striking the bill of exceptions herein upon grounds that the bill of exceptions was made up and signed after the expiration of the term and no special order was entered in the minutes of the trial court extending the time within which to make up and settle the bill of exceptions; that if additional time were duly allowed, the bill of exceptions was not settled within the time allowed; that notice of the settling of the bill of exceptions was not given within the time allowed for settling the bill; that no assignment of errors was presented with the bill of exceptions within the time allowed, that no copy of the assignment of errors was served on the defendant in error within the time allowed for settling the bill of exceptions. This motion was continued till final hearing.

The order made and entered *nunc pro tunc* is that the defendant "is given sixty days in which to prepare and present his bill of exceptions." This allows sixty days after the adjournment of the term. Rule 97 of Circuit Court Rules in Common Law Actions. Lewis v. Meginniss, 25 Fla. 589, 6 South. Rep. 169. The bill of exceptions contains the following: "The said defendant did, on the 16th day of January, 1915, after the expiration of said term, by virtue of a special order herein made, propose this, his bill of exceptions to * * * said Judge, and requested him to sign the same, which, after due notice to the opposite party, or her attorney, is done this 16th day of February, 1015." Preceding this statement is an assignment of errors. There is nothing contained within the bill of exceptions to indicate that an assignment of errors was not presented to the Judge with the bill of exceptions. Nor is there any showing that "a copy of such assignment of errors, together with such notice of the application for the settling of such bill of exceptions

as the Circuit Judge" deemed "reasonable" were not "served upon the defendant in error or his attorney" as required by Special Rule 1. If a proposed bill of exceptions is duly prepared and presented for authentication within the time allowed, it may afterwards be authenticated as of the day on which it was properly presented. Glasser v. Hackett, 37 Fla. 358, 20 South. Rep. 532; Montgomery v. State, 54 Fla. 73, 45 South. Rep. 813. When the proposed bill of exceptions is presented to the Judge within the time allowed, "notice of the application for the settling of such bill of exceptions," may be such "as the Circuit Judge may deem reasonable"; and the notice may be given after the time has expired for presenting the bill of exceptions, if the bill was in fact presented within the time allowed by Special Rule 1. The motion to strike the bill of exceptions is denied.

In 1897 Mrs. Gillman the plaintiff received from Chas. W. Hastings and wife a conveyance of "The whole Lots numbered 51 and 51 A., * * * said whole lots containing or having been supposed to contain 11 89-100 acres, more or less, and fronting 280 feet on Ridgewood (formerly Seaside) Avenue (in the deed hereinafter referred to given as 471 feet), with a depth of 1100 feet, as per the plan above referred to; meaning hereby to convey all the premises first described (viz: as said lots numbered 51 and 51 A.), in a deed from" Joseph Harding and wife Ellen J. Harding to Hastings. The warranty is "against the lawful claims and demands of all persons claiming by, through or under them, the said parties of the first part, but against none other." The conveyance from Harding and wife to Hastings and the conveyance to Mrs. Harding, each describes the land as "fronting

471 feet on Seaside Avenue," and the warranty in each is similar to that in the conveyance to Mrs. Gillman. The plat shows that lot 51 has a frontage of 246 feet, lot 51 A., 225 feet, and lot 52, 275 feet. When Mrs. Gillman received her conveyance of Lots 51 and 51 A., a conveyance of Lot 52 lying north of Lot 51 A., was held by the defendant's predecessor in title, whose fence and possession and occupancy included the north 174 feet of Lot 51 A. Mrs. Gillman occupied the lands south of the fence on Lot 51 A., when a conveyance of Lot 52 was made to the defendant Bossom who took possession of and for more than fourteen years continued to occupy and cultivate the land north of the fence supposed to be on Lot 51 A., 174 feet south of Lot 52.

The contention of the plaintiff below, defendant in error here, is that only a question of fact is involved, to-wit: Whether Bossom the defendant below, "claimed the land which he had fenced regardless of his deed or whether he was simply claiming the land that belonged to him under his deed, which was Lot 52." It is further stated that the jury found the fact to be that Bossom claimed simply Lot 52, wherever that was, and that there was no title by adverse possession of the land in controversy; and it is urged that the evidence shows Bossom "at no time intended to claim any land that was not covered by his deed"; that Bossom put "in evidence his claim of title which shows that he was entitled to only Lot 52, and that he was making no claim to any specific tract regardless of his deed."

The defendant Bossom endeavored to show title by adverse possession in himself to the north 174 feet of Lot 51 A., in controversy, as he had a right to do under the general issue, and while conflicts in the evidence and the

credibility of the witness were primarily for the determination of the jury, yet the legal effect of evidence that is not met by opposing evidence and is not discredited, is a question of law.

In cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title will be acquired by a holding for the period of seven years, is the intention of the party holding beyond the true line. If such occupation is by mere mistake and with no intention upon the part of the occupant to claim, as his own, land which does not belong to him, but he intends to claim only to the true line wherever it may be, the holding is not adverse. If, however, the occupant takes possession believing the land to be his own up to the mistaken line and claiming title to it, and so holds, the holding is adverse. The intent to claim title up to the line is an indispensable element of adverse holding; the claim of right must be as broad as the possession. Simple acquiescence, or lying by without objection, for the statutory period, in case of such adverse holding, will bind the party so lying by to the line, though not the true line. Watrous v. Morrison, 33 Fla. 261, 14 South. Rep. 805.

Does the evidence show that Bossom's claim was as broad as his undisputed possession? Bossom testified that at the time he bought the property that he occupies, there was a fence "between that property and the Gillman property"; that his vendor showed him the fences where he said his lines were; that he "bought from fence to fence"; that the fence was kept up at the same place at least twenty-one years; that the land contained an orange grove cultivated as such by defendant's predecessor and by him as such and he lived on it for fourteen years; that he has "claimed this property ever since"; that "I

supposed I had bought everything that was inside the fence"; that the plaintiff lived quite near on land adjoining that which the defendant occupied and claimed, and that she made no claim to the land now in controversy till a short time before this action was brought and that until then he had known of no claim to the land adverse to his claim and possession.

There is evidence tending to corroborate at least a portion of this testimony and there appears to be no evidence to overcome the probative effect of the defendant's testimony which was not discredited. The burden of the plaintiff's contention is in substance that the defendant's claim of right did not extend to any land except that covered by his paper title, to-wit: Lot 52 which apparently does not cover the land in controversy. But this is not the legal effect of the evidence. Possession and actual occupancy by the defendant, for more than the required statutory period, of the north 174 feet of Lot 51 A., is established by the evidence. It also appears from the evidence that the defendant's intention was to take possession under a supposed right, of the lands up to the fence between the lands pointed out to him as the lands he bought and the lands occupied by the plaintiff and that he did claim and occupy up to the said fence for more than the statutory period before this action was brought; and that during such time the plaintiff living very near by acquiesced in or did not claim against the defendant's right to the possession he held up to the stated fence.

The palpable difference between the fence line and the line between Lots 51 A and 52 as marked on the plat would under the circumstances indicate a definite purpose on the part of the defendant to claim "from fence to fence" as he testified, and not merely to claim the land

described as Lot 52 on the plat, and the actual situation may have prompted the unusual conveyance and limited warranty from the common grantor.

Under these circumstances clearly shown by the evidence, verdict and judgment for the plaintiff are not in accordance with law.

The judgment is reversed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and ELLIS, JJ., concur.