BARNARD KILGORE v. T. H. LEARY

180 So. 35.
Opinion Filed March 8, 1938.
Rehearing Denied April 13, 1938.

*C. E. Ware* and *Dickenson & Dickenson,* for Appellant; *Ralph Richards,* for Appellee.

CHAPMAN, J.—This cause is before this Court on an appeal from a final decree dated March 23, 1937, entered by the Honorable T. Frank Hobson, a Judge of the Circuit Court of Pinellas County, Florida, permanently enjoining appellant from trespassing on plaintiff's property, as described in the bill of complaint. The land in question is a strip extending across an eighty acre tract, being approximately tthirty-two feet wide at the East end, and coming to a point on the West end. The appellee, in the Spring of 1924, acquired title to and went into possession of the lands adjacent to and North of the disputed tract, while appellant in 1910 acquired title to and went into possession of the lands adjacent to and on the South side of the disputed tract. The equities of the cause were by the lower court held to be with appellee, who was plaintiff below, and the defendant seeks a review of the final decree of the Chancellor in this Court.

The evidence shows that appellant here, during the years 1903 or 1904, was the owner of, resided upon and was in possession of the lands adjacent to and North of the disputed tract, and of which the appellee in the Spring of 1924 acquired title to by purchase. Appellant, during the year 1910, acquired title to, resided upon and went into possession of the lands South of the disputed tract. He constructed a wire fence shortly after going into possession on the North side of his property and has asserted possession and ownership of the lands South of the fence since its construction to the time of filing the suit in the lower court. Trees, brush and other vegetation were permitted to grow on each side of the wire fence to be used as a wind-

break and protection of the orange trees of appellant. A picture of the wire fence was offered as evidence by the defendant in the lower court and shows that a pine tree several inches in diameter has grown through the fence and appears to have grown through the fence since it was constructed. The tree likewise contains marks or blazes indicating a land line. Some of the witnesses testified as to the location of a corner post marked by a piece of lightwood and was subsequently supplanted by a concrete marker. The other end of the disputed tract is evidenced by an iron stob and the testimony develops that the wire fence was on a direct line between the concrete marker and the iron stob some several hundred feet in length. Appellant, and other, testified that when the property North of the disputed tract was either bought or sold, the wire fence was recognized as the South boundary by all owners of said property from the time it was sold in 1903 or 1904 by appellant until sometime in 1936. The present litigation was precipitated when appellant sought to clear some of the lands South of the wire fence and set out orange trees.

The witness Sullivan, offered on the part of plaintiff below, testified to surveying the disputed line when employed by a brother of appellant during the year 1912. The vegetation at the time of the survey in 1912 was rank and thick and it required some time for the crew to cut a line through the timber and underbrush sufficient to establish the true line. He picked up the line from a section line near the property and concluded that the fence was within a few feet of the line so established. He did not recall many improvements, such as buildings, clearings, or orange trees on the tract South of the disputed line when it was surveyed by him during the year 1912. It is possible that the corner posts subsequently replaced were established by the witness Sullivan. The appellant has been closely identified with the

tract continuously since the year 1910, as well as the tract North of the disputed line, and the use of the trees or timber as a windbreak for fruit trees South thereof, coupled with leaves and other acts of husbandry, conclusively show that the intention of appellant was to claim ownership of the property South of the wire fence.

It is urged that a finding for appellant would be contradictory to the testimony given by Judge O. K. Reaves, attorney for appellee, in taking title to the property. We can not place such a construction on the testimony of Judge Reaves. He did not testify as to boundaries of the property, but made material investigations in behalf of his client unnecessary to recite in this opinion.

This Court has had before it a number of times disputed land boundaries, and in the case of Watrous v. Morrison, 33 Fla. 261, text pages 267, 270-71, 14 So. 805, 39 Am. St. Rep. 139; said:

"While it is true that the title to real estate can not be transferred, by verbal agreement, yet where the boundary between contiguous lands is uncertain and disputed, the owners of such lands may agree upon a certain line as the permanent boundary line, and where the agreement is followed by actual occupation according to such line as the boundary, the line will be binding upon them, and their successors in title, as the boundary. The line becomes binding not upon the principle that the title to real estate can be passed by parol, but for the reason that the proprietors have by such consent and conduct agreed permanently upon the limits or the extent of their respective lands or property. * * *

"Another principle coming within the discussion of this case is, that in cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title

will be acquired by a holding for the period of seven years, is the intention of the person holding beyond the true line.

"If such occupation is by mere mistake, and with no intention upon the part of the occupant to claim, as his own, land which does not really belong to him, but he intends to claim only to the true line, wherever it may be the holding is not adverse. If, however, the occupant takes possession, believing the land to be his own up to the mistaken line, and claiming title to it, and so holds, the holding is adverse. The intent to claim title up to the line is an indispensable element of adverse holding; the claim of right must be as broad as the possession. Simple acquiescence, or lying by without objection, for the statutory period, in case of such adverse holding will bind the party so lying by to the line, though not the true line. Liddon v. Hodnett, 22 Fla. 442."

Likewise in the case of Acosta v. Gingles, 70 Fla. 13, text 21, 69 So. 717, this Court reiterated the principle enunciated in Watrous v. Morrison, *supra,* when it said:

"Here was a case where the survey, or a dividing line was actually run on the ground actually established by the person giving the property, practically in the presence of the beneficiaries of that gift, two of whom are now parties to this suit, certainly wth their knowledge and consent, a valuation of the two parts respectively into which the property was divided by that line and a settlement between the parties according to such valuation; the line so established is easily located and proved. We think the evidence establishes most clearly that the line was actually agreed upon between the parties as the permanent boundary line between them; that it was established by acquiescence and recognition. Mrs. Acosta and Mrs. Gingles each knew and understood that the portion she was receiving of her father's enclosed premises was the portion lying south, or

the portion lying north, as the case may have been, or that dividing line, a line located by him, who under the circumstances, may be regarded as their common grantor. That being true, the line is binding between the parties * * *"

In the case of Bossom v. Gillman, 70 Fla. 310, text 314-17, 70 So. 364, this Court said:

"The defendant Bossom endeavored to show title by adverse possession in himself to the north 174 feet of Lot 51 A., in controversy, as he had a right to do under the general issue, and while conflicts in the evidence and the credibility of the witness were primarily for the determination of the jury, yet the legal effect of evidence that is not met by opposing evidence and is not discredited, is a question of law.

"In cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title will be acquired by a holding for the period of seven years, is the intention of the party holding beyond the true line. If such occupation is by mere mistake and with no intention upon the part of the occupant to claim, as his own, land which does not belong to him, but he intends to claim only to the true line wherever it may be, the holding is not adverse. If, however, the occupant takes possession believing the land to be his own up to the mistaken line and claiming title to it, and so holds, the holding is adverse. The intent to claim title up to the line is an indispensable element of adverse holding; the claim of right must be as broad as the possession. Simple acquiescence, or lying by without objection, will bind the party so lying by to the line, though not the true line. Watrous v. Morrison, 33 Fla. 261, 14 South. Rep. 805.

"Does the evidence show that Bossom's claim was as broad as his undisputed possession? Bossom testified that at the time he bought the property that he occupies, there

was a fence 'between the property and the Gillman property; that his vendor showed him the fences where he said his lines were; that he 'bought from fence to fence'; that the fence was kept up the same place at least twenty-one years; that the land contained an orange grove cultivated as such by defendant's predecessor and by him as such and he lived on it for fourteen years; that he has 'claimed this property ever since'; that 'I supposed I had bought everything that was inside the fence'; that the plaintiff lived quite near on land adjoining that which the defendant occupied and claimed, and that she made no claim to the land now in controversy till a short time before this action was brought and that until then he had known of no claim to the land adverse to his claim and possession.

"There is evidence tending to corroborate at least a portion of this testimony and there appears to be no evidence to overcome the probative effect of the defendant's testimony which was not discredited. The burden of the plaintiff's contention is in substance that the defendant's claim of right did not extend to any land except that covered by his paper title, to-wit: Lot 52 which apparently does not cover the land in controversy. But this is not the legal effect of the evidence. Possession and actual occupancy by the defendant, for more than the required statutory period, of the north 174 feet of Lot 51A., is established by the evidence. It also appears from the evidence that the defendant's intention was to take possession under a supposed right, of the lands up to the fence between the lands pointed out to him as the lands he bought and the lands occupied by the plaintiff and that he did claim and occupy up to the said fence for more than the statutory period before this action was brought; and that during such time the plaintiff living very near by acquiesced in or did not claim

against the defendant's right to the possession he held up to the stated fence.

"The palpable difference between the fence line and the line between Lots 51 A and 52 as marked on the plat would under the circumstances indicate a definite purpose on the part of the defendant to claim 'from fence to fence' as he testified, and not merely to claim the land described as Lot 52 on the plat, and the actual situation may have prompted the usual conveyance and limited warranty from the common grantor."

Plaintiff below truthfully admits that he had no knowledge of the disputed tract prior to his purchase in the early Spring of 1924. It is true that he produced a number of witnesses who testified as to claims of possession of the disputed tract, but considering the probative value of these different witnesses in the light of the testimony of appellant, who lays claim to the wire fence since its construction until this suit was filed, it appears his testimony is corroborated by his son, who had a knowledge of the property for the past twenty years. There is practically no dispute or contradiction of the testimony of appellant and his son about the lands south of the wire fence prior to the year 1924. It is true that some of the employees about the two tracts gave evidence as to observations during the time of employment, both for appellee and appellant.

We are not unmindful of the well settled equity rule to the effect that every presumption is in favor of the ruling of the trial Judge and that the equities of the cause were correctly decided by the Chancellor as fully expressed in Palm Beach Estates v. Croker, 106 Fla. 617, 143 So. 792, but we can not overlook the fact of the cement and iron stob markers and the location of the wire fence on a line between the two and the claim of ownership on the part of the appellant by using the trees and vegetation as a

wind breaker for his fruit trees south of the wire fence for some twenty odd years.

We think the decree appealed from should be reversed for further proceeding in the Court below not inconsistent with this opinion. It is so ordered.

ELLIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.