50 So.2d 125 (1950)
SHAW et al.
v.
WILLIAMS.
Supreme Court of Florida, en Banc.
December 22, 1950.
Rehearing Denied February 5, 1951.
*126 Frank Bezoni of Bezoni & Ervin, Tallahassee, for appellants.
Ben A. Meginniss of Meginniss, Thompson & Morrison, Tallahassee, for appellee.
TERRELL, Justice.
March 15, 1950, appellee filed her bill for declaratory decree against appellants wherein she alleged a difference between them as to the boundary between their contiguous properties and prayed for a determination of her ownership and of the line dividing their said lands, more particularly described together as Lots 41, 44 and 45 in the North addition to Tallahassee, fronting West on Calhoun Street. Defendants answered the bill denying the material allegations thereof and interposed other defenses. On final hearing the chancellor found for the plaintiff and decreed the true line between the property of the plaintiff and the property of the defendants to be as follows: "Begin on the east side of Calhoun Street at a point due west of the center of an old Sago palm located approximately 109.6 feet north of the northwest intersection of Calhoun and Call Streets and run thence easterly through said Sago palm to the center of a bamboo hedge, thence along the center of said hedge to the east end of said hedge; thence in a straight line to an iron pipe on the east line of said Lot 44, approximately 115 feet North of the north line of Call Street in the City of Tallahassee, Florida."
This appeal is from that decree.
The point for determination is whether or not the line determined by the chancellor, was the true boundary line between the lands of appellants and the lands of appellee. It being at variance with the line shown by a survey made on the ground by appellants.
It is admitted that the title of the parties to the lands in question derive from a common source, that the boundary line between two parcels of land differing from the true boundary line may be established by acquiescence of the adjoining land-owners for the prescriptive period, that the burden is on the person claiming the existence of a boundary by acquiescence to prove the essentials necessary to the establishment of such a boundary. It is also agreed that the essentials to a boundary by acquiescence are: (1) Uncertainty or dispute as to the location of the true boundary. (2) Location of a boundary line by the parties. (3) Acquiescence in such location for the prescriptive period.
The test of acquiescence by prescription was defined by this court in Watrous v. Morrison, 33 Fla. 261, 14 So. 805, 807 "where the boundary between contiguous lands is uncertain or disputed, the owners of such lands may agree upon a certain line as the permanent boundary line; and, where the agreement is followed by actual occupation according to such line as the boundary, the line will be binding upon them, and their successors in title, as the boundary. The line becomes binding, not upon the principle that the title to *127 real estate can be passed by parol, but for the reason that the proprietors have by such consent and conduct agreed permanently upon the limits or the extent of their respective lands". Liddon et al. v. Hodnett, 22 Fla. 442; Bossom v. Gillman, 70 Fla. 310, 70 So. 364; Kilgore v. Leary, 131 Fla. 715, 180 So. 35, 36; Griffin v. Brown, 167 Iowa 599, 149 N.W. 833.
The point of disagreement here is not as to the law of the case but whether or not the evidence shows any of the elements essential to the establishment of a boundary by acquiescence. The evidence shows that appellee acquired title to the North 55 feet of Lot 44 by succession from Elizabeth T. Williams, the mother of her deceased husband who died in January, 1931, since which time appellee has lived on the property as her home. On July 10, 1877, Elizabeth T. Williams conveyed the South 30 feet on Lot 44 to George P. Raney who also acquired Lot 41 which joins the South 30 feet of Lot 44 on the South. George P. Raney died testate in January 1911, and his heirs on June 12, 1917 conveyed the Lot 41 and the South 30 feet of Lot 44 to Rebecca Argyle, Susan Elizabeth Argyle and Mildred Claxton Argyle. The last surviving Argyle sister, Rebecca, ultimately came in possession of Lot 41 and the South 30 feet of Lot 44 and conveyed it to Mary Elizabeth Lewis, who in turn, on August 24, 1945, conveyed it to appellants.
There is no suggestion in the pleadings that there was any dispute about the boundary line between the lands of the parties hereto, nor was there ever any agreement between them about the boundary. The evidence does show that the bamboo hedge which the court fixed as the boundary here was planted by appellee in 1935, that before she planted it she interviewed Miss Rebecca Argyle about planting it and her only response was that she hoped it would not kill the ivy. She further testified that she thought she was planting it on the line and that if mistaken she "didn't intend to claim any lands that they (Argyles) owned." The most that the evidence shows is that appellee voluntarily planted the hedge where she thought the line was, but there is no showing whatever that she and Miss Argyle discussed the question of boundary, that there was any dispute or uncertainty as to the boundary, that any line was agreed on by them as the boundary or that such a line was acquiesced in for the prescriptive period.
In Watrous v. Morrison and other cases herein cited, the court held that the real test as to whether or not title has been acquiesced in for the prescriptive period is the intention of the party so holding. If the occupancy is by mistake, with no intention upon the part of the occupant to claim as his own, land which does not belong to him, but he intends to claim only to the true line, wherever it may be, the holding is not adverse. If however, the occupant takes possession, believing the land to be his own up to the mistaken line and claiming title to it and so holds, the holding is adverse. The intent to claim title up to the line is an indispensable element of adverse holding. The claim of right must be as broad as the possession. Simple acquiescence, or lying by, without objection for the statutory period, in case of such adverse holding, will bind the party so lying by to the line, though not the true line.
The appellants acquired their title in 1945, and made preliminary measurements which indicated that the line was north of the bamboo hedge but south of the line that was later surveyed by them early in 1950. It is true that neither Miss Rebecca Argyle nor Mrs. Lewis or appellants raised any question about the true boundary until this litigation was started, but neither did appellee make any move to indicate that she was claiming title to other than the true line. She set the hedge where she thought the true line was but she made no survey to determine its location, she had no agreement with appellants predecessors in title as to its location, there was no dispute between them as to its location, she did not put them on notice that she was claiming to the bamboo hedge. In fact, she testified positively that when she set the hedge she did not intend to claim any lands owned by appellants. When one relies on a boundary established by acquiescence there must be mutual uncertainty or *128 an actual dispute between them about the boundary line. Such an uncertainty means actual lack of knowledge on the part of both land owners of the true boundary line. When the bamboo hedge was planted by appellee she gave Miss Argyle no notice that it was intended as a boundary line. So far as the record discloses it was planted for convenience or other purposes personal to appellee without any intent to locate a disputed boundary line between them.
Passive acquiescence may forfeit one's right to dispute a boundary, but to do so, it must follow knowledge of the location of the line by the adverse party. No such knowledge was brought to appellants or their predecessors in title. Appellants can not be said to have acquiesced in a boundary line designated by appellee, concerning which they had no knowledge. So far as the record shows, there was no discussion between Miss Rebecca Argyle and appellee about a boundary line when the matter of planting the bamboo hedge was discussed. If there was any dispute about the line between them it was not brought out. Nothing was said about locating a boundary line and there was no agreement as to the location of such a line. The court house was only four blocks away. There a plat of the city and the lands in question was available and if there had been a dispute as to the boundary between the parties data could have been easily secured and survey or measurements made to locate the true boundary. It was very different from being isolated where lines are uncertain, lands are of debatable value and surveys are difficult to make. The lands in question were in the heart of the city and every means for locating the exact boundary were easily accessible.
We do not think a boundary by acquiescence was established. It follows that the decree of the chancellor must be and is hereby reversed.
Reversed.
ADAMS, C.J., and CHAPMAN, SEBRING and HOBSON, JJ., concur.
THOMAS, J., dissents.
ROBERTS, J., not participating.