210 So.2d 757 (1968)
SEABOARD AIR LINE RAILROAD COMPANY, a Virginia Corporation, Appellant,
v.
CALIFORNIA CHEMICAL COMPANY, a Delaware Corporation, Formerly California Spray Chemical Corporation, Appellee.
No. 412.
District Court of Appeal of Florida. Fourth District.
May 29, 1968.
*758 William B. Mesmer, of Akerman, Senterfitt, Eidson, Mesmer & Robbinson, Orlando, for appellant.
Leon Handley and Richard W. Lassiter, of Gurney, Gurney & Handley, Orlando, for appellee.
FARRINGTON, OTIS, Associate Judge.
Plaintiff in ejectment has appealed from a final judgment for defendant based on a directed verdict. The parties will be referred to as they were in the trial court.
Plaintiff is the owner of the record title of the disputed tract. The trial judge determined as a matter of law that defendant had acquired title to the disputed tract by adverse possession.
The disputed tract is contiguous to the west boundary of a tract acquired by defendant by deed in 1947. Negotiations for the purchase of defendant's property were conducted by M.C. Van Horn, who was then defendant's southern manager. In negotiating for the sale to defendant the prior owner of the tract described in defendant's 1947 deed pointed out the boundaries of the property to Van Horn, indicating that the tract being offered for sale to defendant included all land east of an old barbed wire fence then located on the west line of the disputed tract.
Defendant purchased the property described in its 1947 deed, believing that the tract now in dispute was included in the deed description. In fact, the tract in dispute was not included in defendant's 1947 deed description, but is part of a tract to which plaintiff acquired record title by a warranty deed from August T. Champlain and Marie T. Champlain in December 1955.
After completing purchase of the land described in its 1947 deed, defendant through its agents and employees took possession of the entire area which had been pointed out to Van Horn by defendant's vendor prior to purchase, and has since continuously used the disputed tract for the storage of 55-gallon steel drums.
Defendant's regional manager, Douglas B. Maughan, has had supervisory control of the property claimed by defendant under its 1947 deed including the tract in dispute since 1949. In 1953, after obtaining proper corporate approval, Maughan caused a chain link fence to be erected completely enclosing the disputed tract with a major portion of the land described in its deed. The main purpose of the fence was to exclude children from the yard where the steel drums were stacked so as to avoid harm to the children from the dangerous chemicals contained in or contaminating the steel drums. At all times from 1947 until *759 the complaint was filed on May 1, 1964, the disputed tract has been maintained by defendant and used by it as a storage area and hard-surfaced roadway and turning area for defendant's large trucks, and at all times since 1953 the disputed tract has been enclosed by a substantial fence with other land to which defendant has a valid paper title.
The trial judge determined as a matter of law that by protecting the disputed tract for more than seven years by a substantial enclosure with land to which defendant had acquired valid title by its 1947 deed, defendant had acquired fee simple title to the disputed tract by adverse possession. This determination involved the application of F.S. Sections 95.16 and 95.17, F.S.A. 1967,[1] since without benefit of these statutes defendant's possession of the disputed tract would have been without color of title.[2]
It is plaintiff-appellant's first contention that defendant's possession of the disputed tract was not under color of title, since the 1947 deed to defendant's land, a major portion of which was enclosed with the disputed tract, was a valid deed conveying good title to the land described therein. In support of this contention plaintiff relies on Blackburn v. Florida West Coast Land & Development Co.,[3] wherein the Second District Court of Appeal stated that the enclosure by fence of a contiguous strip of property to which the encloser had no record title along with land to which the encloser had valid title and subsequent possession of the entire enclosed area for more than seven years did not constitute possession under color of title despite the provisions of F.S. Section 95.17(2), F.S.A. 1967, for the reason that valid title does not constitute color of title.
We reject this contention of plaintiff-appellant and choose to follow the holding in Kiser v. Howard,[4] where in a factual situation similar in principle to the instant case the First District Court of Appeal held *760 that the enclosure by fence under claim of title of a contiguous strip to which the encloser had no paper title with land to which the encloser held valid record title would bring the encloser's claim within the provisions of F.S. Section 95.17(2), F.S.A. 1967, with the result that his possession of the disputed contiguous strip would be deemed to have been possessed under color of title. This construction accords with what seems to us the clear intent of F.S. Section 95.17(2), F.S.A. 1967, which makes no reference to valid or invalid instruments but by its terms applies to contiguous land enclosed with land to which title is founded upon a written instrument, or a judgment or decree. We are concerned with the possession of the disputed tract, not the possession of the land described in defendant's deed. As to the disputed tract defendant had no paper title but had color of title by operation of the provisions of F.S. Section 95.17(2), F.S.A. 1967, to the effect that contiguous land enclosed with the land described in the written instrument under which defendant claimed would be deemed to be premises included within the written instrument.
Plaintiff-appellant's second contention is that there can be no adverse possession in a mistaken boundary case unless there is a subjective intent on the part of the possessor at the time of taking and during the holding to take the property of another. In support of this contention plaintiff cites the cases of Liddon v. Hodnett[5] and Bossom v. Gillman.[6] This contention of plaintiff is not supported by the cases cited. The Florida rule as stated in the Bossom case at page 366, which tracks headnote eight of the Liddon case, is as follows:
"In cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title will be acquired by a holding for the period of seven years is the intention of the party holding beyond the true line. If such occupation is by mere mistake, and with no intention upon the part of the occupant to claim, as his own, land which does not belong to him, but he intends to claim only to the true line, wherever it may be, the holding is not adverse. If, however, the occupant takes possession, believing the land to be his own, up to the mistaken line, and claiming title to it, and so holds, the holding is adverse. The intent to claim title up to the line is an indispensable element of adverse holding; the claim of right must be as broad as the possession. * * *"
In the Bossom case the Florida Supreme Court reversed a lower court judgment in favor of the paper title holder against a possessor to a mistaken boundary line marked by a visible fence as "not in accordance with law."
Plaintiff-appellant relies on the testimony of defendant's employees to the effect that they didn't intend to steal the disputed tract and didn't intend to take the property of another as constituting evidence that defendant's possession was not adverse. This testimony was given in response to questions which hypothesized facts and considerations not shown to have existed in the minds of the witnesses at the time of taking and holding the disputed tract, and is entitled to little weight in determination of the question of whether or not defendant's possession was adverse. In the case of Goodno v. South Florida Farms Co.,[7] a case which involved possession under a mistaken claim of title rather than a mistaken boundary, the court citing Liddon v. Hodnett, supra, which did involve a mistaken boundary, as authority, said on pages 116 So. 25-26:
"* * * In reply to a question propounded to defendant on cross-examination if he intended to go on land of other people that did not belong to him and just take it, he replied that of course he did not, he intended to claim the land for which he had a deed. It is apparent *761 that when defendant took possession of sections 28 and 30 south of the river in 1906, claiming title to the land, he was acting under a mistaken belief that he had a good and valid deed to such land.
"* * *
"And, where the claimant takes possession of land by mistake and holds the same adversely claiming title to the land for a period of seven years, the law is not concerned with the question as to what might have been his intention if he had known he had no title to the land before his possession ripened into title, but the question involved is what was his intention during the period of his holding. The true question is whether, when he acquired possession, he believed it to be his own and intended to and did hold it as his own and against all persons. The intention is the test, and not the mistake. Liddon v. Hodnett, 22 Fla. 442."
We find the Florida rule to be that adverse possession is established by the occupant's taking possession with the belief that the land is his up to the mistaken line and so holding under a claim of title to that line.[8] Plaintiff-appellant's contention that the occupant must have the subjective intent to take the property of another in order for his possession to be adverse is rejected.
Plaintiff-appellant's final contention is that the acts of the employees of the corporate defendant in adversely possessing the disputed tract could not establish adverse possession, since these employees had no authority to acquire land for the defendant corporation. This contention presumes the validity of the plaintiff-appellant's prior contention that for possession of an occupant in a mistaken boundary case to be adverse, the occupant must have the subjective intent to acquire the property of another, which prior contention we have rejected. A private corporation may acquire title by adverse possession in the same manner and to the same extent as an individual.[9] The corporate intent to possess property under claim of ownership is properly inferred from the acts of its agents and employees in possessing and using the property on behalf of the corporation in the conduct of its business. The testimony of defendant's employees at the trial that at all times since 1947 they openly possessed and used the disputed tract in the conduct of defendant's business under claim the defendant was the owner thereof was sufficient to establish corporate intent to occupy the disputed property under claim of title.
The judgment appealed from is affirmed.
WALDEN, C.J., and CROSS, J., concur.
NOTES
[1] "§ 95.16 Real actions; adverse possession under color of title; requirements.  Whenever it appears that the occupant, or those under whom he claims, entered into possession of premises under claim of title exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree, or judgment for seven years, the premises so included shall be deemed to have been held adversely, except that, where the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract; provided, that adverse possession commencing after December 31, 1945, shall not be deemed to be adverse possession under color of title unless and until the instrument of conveyance of the premises in question upon which such claim of title is founded shall be duly recorded in the office of the clerk of the circuit court of the county in which the premises are situated."

"§ 95.17 Definition of possession and occupation under color of title.  For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land shall be deemed to have been possessed and occupied in any of the following cases:
"* * *
"(2) Where it has been protected by a substantial enclosure. All contiguous land protected by such substantial enclosure shall be deemed to be premises included within the written instrument, judgment, or decree, within the purview of § 95.16; * * *" (Emphasis added.)
[2] F.S. Sections 95.18 and 95.19, F.S.A. 1967, which became effective June 5, 1939, provide that possession of an occupant without color of title will not be deemed adverse unless the occupant returned the property to the county tax asessor by its correct legal description and paid all taxes theretofore or thereafter levied before they became delinquent. These requirements were not met by defendant; hence defendant's possession of the disputed tract could not be deemed adverse unless such possession was under color of title.
[3] Blackburn v. Florida West Coast Land & Development Co., Fla.App. 1959, 109 So.2d 413.
[4] Kiser v. Howard, Fla.App. 1961, 133 So.2d 746.
[5] Liddon v. Hodnett, 1886, 22 Fla. 442.
[6] Bossom v. Gillman, 1915, 70 Fla. 310, 70 So. 364.
[7] Goodno v. South Florida Farms Co., 1928, 95 Fla. 90, 116 So. 23.
[8] This view was expressed by the late James W. Day, revered professor of law at the University of Florida at page 259 of an article entitled The Validation of Erroneously Located Boundaries by Adverse Possession and Related Doctrines, 10 U.Fla.L.Rev. 245.
[9] 3 Am.Jur.2d, Adverse Possession, § 135, p. 221.