492 So.2d 745 (1986)
MARK IX, INC., a Florida Corporation, Appellant,
v.
Elizabeth M. SURETTE, Appellee.
No. BK-236.
District Court of Appeal of Florida, First District.
July 31, 1986.
Rehearing Denied August 27, 1986.
*746 Kenneth R. Ridlehoover, Pensacola, for appellant.
Matt E. Dannheisser, of Emmanuel, Sheppard & Condon, Pensacola, for appellee.
MILLS, Judge.
This is an appeal from a partial final judgment which quieted title to a certain section of real property in Surette, based on the doctrine of boundary by acquiescence. Mark IX contends the evidence at bar is insufficient to meet the requirements of boundary by acquiescence, and the trial court's conclusion cannot be supported by any other reasoning, such as the doctrine of boundary by agreement. We disagree and affirm.
The evidence adduced below established that the real property in dispute herein was once part of a large tract owned by Ray Kee, which was divided into a western and eastern tract following his divorce. His wife, Florida Kee Stansbury, took title to the western portion. Thereafter, in 1939, Ben Fillingim acquired title to one acre of Mr. Kee's parcel, located next to its western boundary. Fillingim then proceeded to erect a fence around the perimeter of his lot.
In order to build this fence, Fillingim testified that he started at the southwestern corner of his tract and proceeded north measuring eighty feet from the east until he reached an existing fence running along the northern boundary of the property. The intersection with this fence gave Fillingim the northwestern corner. He then ran a north-south fence along the entire line between his property and that of Florida Kee Stansbury as shown below.
*747 
Sometime after the construction of the fence, the one-acre parcel owned by Fillingim changed hands several times and ultimately became titled in the name of Elizabeth Surette in 1946. The subject fence was still in existence at that time. Subsequently, in 1949, Fillingim acquired the property immediately to the west of Surette's tract, once a portion of the property owned by Florida Kee Stansbury.
Surette was unaware of the precise location of the true boundary line between her property and that of Fillingim until 1978, when she had a survey conducted. Prior to that time she had assumed the fence marked the boundary.
In February of 1984, Fillingim conveyed his property to Mark IX, Inc., for no monetary consideration. Following this transaction, Mark IX began negotiations with Surette for the purchase of the disputed area. However, nothing was resolved.
In March, Mark IX bulldozed over the entire portion of the disputed property. As a result, Surette initiated this lawsuit asserting three causes of action: Quiet title (Count I), Ejectment (Count II), and Trespass (Count III).
Pursuant to a stipulation by the parties, an order was entered decreeing separate trials on the issue of ownership and the issue of damages. On 22 November 1985, a partial final judgment was entered in favor of Surette adjudging that she had satisfied her burden of proof inasmuch as the facts established a boundary by acquiescence to the disputed property.
In Shaw v. Williams, 50 So.2d 125 (Fla. 1950), the Florida Supreme Court set forth the elements necessary to establish a boundary by acquiescence as follows: (1) uncertainty or dispute as to the location of the true boundary; (2) location of a boundary line by the parties; and (3) acquiescence in such location for the prescriptive period.
Clearly, the second and third requirements of the doctrine have been met in the present case. Surette and Fillingim occupied their respective properties up to the fence, which they mutually recognized and acquiesced in as the boundary line of their adjoining lands. They conducted themselves in this manner from 1949, when Fillingim bought the western tract, until 1984, when Fillingim conveyed his parcel to Mark IX.
The first requirement of uncertainty presents a more difficult question. In essence, Mark IX argues that there was no *748 uncertainty involved because the parties were certain the fence was the boundary until the 1978 survey was performed. This argument is compelling and finds some support in Shaw v. Williams, supra, wherein the Supreme Court opined that if occupancy of land is by mistake, with no intention upon the part of the occupant to claim as his own land which does not belong to him, the holding is not adverse. See also, Holley v. May, 75 So.2d 696 (Fla. 1954) (there needs to be a cognizance on the part of adjoining landowners that the property line is in doubt).
Surette argues, and apparently the trial court agreed with her, that there was uncertainty because there was no survey conducted when the fence was erected, and Fillingim established the line of the fence by unscientific means. In fact, Fillingim testified at trial that he suspected the fence was not placed exactly on the property line as he was just "free lancing" and could not have been certain without a survey.
The difficulty comes with the testimony of Surette who stated she was sure the fence was the boundary. However, as the Shaw v. Williams court stated, uncertainty means actual lack of knowledge on the part of both landowners of the true boundary. 50 So.2d at 128.
Further support for the trial court's ruling can be found in McDonald v. O'Steen, 429 So.2d 407 (Fla. 1st DCA 1983). In that case, the court ruled the placement and duration of a fence, absent some other explanation for its exact location, is sufficient evidence of the requisite uncertainty. It should be noted, however, the court specifically limited its holding to the facts of the case which involved a common grantor. Notwithstanding the lack of a common grantor in the present case, we are still inclined to find McDonald controlling here. The fact that Fillingim was a predecessor in title to Surette and thereafter became the owner of the land adjoining hers puts this case in a similar posture. See also, De Roche v. Winski, 409 So.2d 41 (Fla. 2d DCA 1981).
Having determined that the trial court's ruling in favor of Surette is supported by competent, substantial evidence, we affirm the judgment quieting title to the property in her. In view of this disposition, we do not feel it is necessary to discuss whether this holding could also be supported by the alternative doctrines of boundary by agreement or adverse possession.
Affirmed.
WIGGINTON and NIMMONS, JJ., concur.