496 So.2d 215 (1986)
Freddy BAKER and Karen Baker, Appellants,
v.
Ilona NIESS, Appellee.
No. BI-405.
District Court of Appeal of Florida, First District.
October 21, 1986.
*216 George Ralph Miller, DeFuniak Springs, for appellants.
Angus G. Andrews, DeFuniak Springs, for appellee.
JOANOS, Judge.
Appellants Freddy Baker and Karen Baker (the Bakers) appeal from a final judgment establishing the location of a boundary line and denying their defenses of adverse possession and acquiescence. The issues for our review are (1) whether an earlier survey should have been admitted into evidence, and (2) whether the trial court should have ruled the elements of boundary by acquiescence had been satisfied. We affirm.
Appellee Ilona Niess (Niess), plaintiff in the trial court proceedings, filed a complaint alleging, inter alia, that a garage and shed owned by the Bakers encroached on her property. Niess sought a determination of the true boundary line and removal of the structures, if they were found to be encroachments. The Bakers defended the suit on the basis of adverse possession and acquiescence.
The trial court sat as trier of fact, and heard testimony from the parties, from a surveyor hired by Niess, and from a neighbor who testified on behalf of the Bakers. Niess stated that when she purchased her property in 1968, an old fence was in place between her property and the property which is now owned by the Bakers. Sometime in 1969 or 1970, Niess erected a second fence approximately ten feet inside her property line. Her property line had been marked by the then existing fence. Niess stated she built the second fence because the original fence was not high enough to contain her dogs. In addition, she decided to erect the second fence to provide a buffer *217 zone between her dogs and her neighbor's property.
In 1968 when Niess purchased her property, Mr. Hohenshell owned and lived on the adjacent property. This property is now owned by the Bakers. After Niess erected the second fence, Mr. Hohenshell removed the original fence. When Niess asked Mr. Hohenshell why he removed her fence, he explained he did so to make it easier to cut the grass. When Niess was asked whether she had ever objected to the fence's removal or attempted to advise anyone that the second fence was not the true boundary line, she responded she assumed Mr. Hohenshell knew he was on her property, so she had no reason to object.
Sometime between 1968 and 1970, Mr. Hohenshell built a metal shed or garagelike structure on what is now the disputed property line. The Bakers purchased the property from Mr. Hohenshell in 1974 or 1975. Then in 1983 or 1984, the Bakers built a "lean-to shed." This second structure is also on the disputed property line.
Niess testified that she knew her present fence was inside the original survey line. When asked why she allowed Mr. Hohenshell to build a garage on her land, she responded that she did not allow it, nor did she object to it per se. Instead, she objected because Mr. Hohenshell moved her old fence. According to Niess, once the old fence was removed, it was difficult to tell the location of the boundary line. She said she had never agreed with the Bakers that the boundary was located anywhere other than the line established by her surveyor, Mr. Jenkins.
Mr. Jenkins surveyed the property for Niess in 1984. The record reflects that Mr. Jenkins had the benefit of a Department of Transportation survey and a survey made in the 1960's by Mr. Schilling. The Schilling survey, which was not in evidence, apparently placed the boundary line on the line marked by the presently existing fence. The trial court refused to permit further questions based on any document not in evidence. At that point, counsel for the Bakers moved to place the Schilling survey in evidence on the ground that it was a part of Mr. Jenkins's work product. Niess's counsel maintained the survey was not work product because Mr. Jenkins had not relied on it in performing his own survey. The trial court sustained the objection to admission of the Schilling survey.
The record reflects that differences arose between the parties in 1984. According to Baker, his first knowledge of the boundary dispute occurred when he observed the surveyor cut through his [Baker's] woods. He testified that they purchased their property in 1974 with the assumption that the fence marked the boundary. Acting on this assumption, they have utilized the property up to the fence since the date of purchase.
The neighbor who appeared as a witness on behalf of the Bakers, stated he had lived in the area for forty years and had helped build the original fence when he was a boy. According to the neighbor, the present fence is placed in the same location as the original fence. He acknowledged that his own land would be affected if it were determined the west boundary line of the Bakers' property was actually eleven to fifteen feet west of the fence line.
The trial court established the property line in accordance with the line indicated in the survey prepared at the behest of Niess. Finding that neither adverse possession nor boundary by acquiescence had been shown, the trial court directed the Bakers to remove any improvements encroaching on Niess's property within a period of thirty days.
The first point raised in this appeal concerns the exclusion of the Schilling survey. The Bakers urge the survey should have been admitted on any one of three theories. First, they contend the survey is a self-authenticating document within the purview of Section 90.902, Florida Statutes. Second, they contend the survey constitutes material relied upon by an expert witness and so is admissible pursuant to Section 90.706, Florida Statutes. And third, they contend the Schilling survey comprised a part of Mr. Jenkins's "field notes" and should have been admitted as his work product. We agree with the trial court that a proper predicate was not laid *218 regarding the authenticity of the document. Finding no merit in the arguments presented for reversal of point one, we affirm the trial court's ruling on this issue.
The second point raised in this appeal, the question of boundary by acquiescence, warrants some discussion. The elements of the doctrine of boundary by acquiescence are: (1) uncertainty or dispute as to the location of the true boundary, (2) location of a boundary line by the parties, and (3) acquiescence in such location for the prescriptive period. Shaw v. Williams, 50 So.2d 125, 126 (Fla. 1950); Mark IX, Inc. v. Surette, 492 So.2d 745 (Fla. 1st DCA 1986); Campbell v. Noel, 490 So.2d 1014 (Fla. 1st DCA 1986); McDonald v. O'Steen, 429 So.2d 407, 409 (Fla. 1st DCA 1983). The element of uncertainty or dispute may be satisfied even though the parties are not overtly hostile. Sanlando Springs Animal Hospital, Inc. v. Douglass, 455 So.2d 596 (Fla. 5th DCA 1984), pet. for review denied, 461 So.2d 114 (Fla. 1985). Uncertainty in the context of boundary by acquiescence does mean, however, "an actual lack of knowledge on the part of both land owners of the true boundary line." Shaw v. Williams, 50 So.2d at 128. See also Mark IX, Inc. v. Surette, supra. Although passive acquiescence may forfeit one's right to dispute a boundary, forfeiture will apply only if the adverse party has knowledge of the location of the line. Shaw v. Williams, 50 So.2d at 128.
In the instant case, there was sufficient evidence for the trial court to determine that the first element, that of uncertainty or dispute as to the location of the true boundary line, has not been established. The uncertainty regarding the boundary line must be shared by both property owners. Shaw v. Williams, 50 So.2d at 128. Although the record reflects the requisite uncertainty on the part of the Bakers, Niess never wavered in her insistence that she had never recognized the present fence as the boundary line. Niess testified that sometime between 1968 and 1970 she built a new and higher fence ten feet inside her property line, which was at that time marked by a fence only three feet high. This second fence was erected for two reasons: (1) because Niess wished to establish a buffer zone between her property and that of her neighbors, and (2) because Niess needed a higher fence to contain her dogs. We find these reasons sufficiently explain the location of the present fence so as to negate a finding of the "requisite doubt or uncertainty necessary to establish a boundary by acquiescence" which pertained in McDonald v. O'Steen 429 So.2d at 409.
Implicit in the trial court's ruling is his acceptance of Niess's testimony on the question of her certainty regarding the location of the boundary line. When a case is tried before a trial judge sitting without a jury, his conclusions have the weight of a jury verdict and come to this court clothed with a presumption of correctness. Therefore, we must interpret those conclusions in a light most favorable to sustain the trial court's conclusions. Turner v. Lorber, 360 So.2d 101, 104 (Fla. 3d DCA 1978). Although we might have reached a different conclusion, where as in the circumstances of this case, the decision rested largely on an evaluation of the credibility of witnesses, this court will not substitute its judgment for that of the trial court. See Demps v. State, 462 So.2d 1074, 1075 (Fla. 1984); Royco, Inc. v. Cottengim, 427 So.2d 759 (Fla. 5th DCA), pet. for review denied, 431 So.2d 989 (Fla. 1983); Cuna Mutual Insurance Society v. Adamides, 334 So.2d 75 (Fla. 3d DCA 1976); Biscayne Manufacturing Corp. v. Sandav Corp., 323 So.2d 315 (Fla. 3d DCA 1975). As a final note, we observe that the doctrine of "passive acquiescence" does not apply, since the record reflects the Bakers lacked knowledge of the location of the true boundary line. See Shaw v. Williams, 50 So.2d at 128.
For the foregoing reasons, the final judgment is affirmed.
ZEHMER, J., and CAWTHON, VICTOR M., Associate Judge, concur.