214 So.2d 62 (1968)
Marvin WILLIAMS, Ralph Gordon and Hattie Gordon, Appellants,
v.
Thelma E. JOHNTRY and Her Husband, Wilbur L. Johntry, Appellees.
No. J-372.
District Court of Appeal of Florida. First District.
September 10, 1968.
Rehearing Denied October 9, 1968.
Ernest D. Jackson, Sr., Jacksonville, for appellants.
Rhydon C. Latham, Jacksonville, for appellees.
JOHNSON, Judge.
This is an appeal from a final decree of the Circuit Court, Seventh Judicial Circuit of Florida, permanently enjoining the appellants, defendants below, from trespassing on or using certain lands, ownership of which is claimed by the respective parties.
As found and determined by the trial court, this case involved a boundary line dispute, as distinguished from a title suit.
Plaintiffs below filed a complaint for injunction against the defendants, appellants herein, restraining them from trespassing upon and using certain lands claimed by the plaintiffs, described as Government Lots 21 and 22, Section 18, Township 11 South, Range 23 East.
It appears from the evidence, that the defendants Ralph Gordon and Hattie Gordon, were the son and widow, respectively, *63 of Roy Gordon, deceased, who had acquired a deed in 1950 as to Lot 6, Section 19, Township 11 South, Range 23 East in Putnam County, which property adjoined Government Lots 21 and 22 of Section 18, described supra. At the time of obtaining the deed by Roy Gordon, according to the testimony of several witnesses, there was a fence which the parties thought was the boundary line between the two properties. The real dispute herein, arose over whether that fence did in fact constitute the true boundary line between the parties.
The fence in question had been where it was for such a long time that no one attempted to establish who put up the fence. The plaintiffs had only acquired the property some 8 or 10 years prior to the suit, but the plaintiff, Wilbur L. Johntry, testified at one of the hearings that the fence had been there for more than 50 years according to his own personal knowledge although it had not always been well maintained. Said plaintiff also admitted that the defendants had been using the land up to the fence and had cultivated it and cut trees off it and etc. He claims, however, that for 1 year he cultivated it, but he does not explain what he did about the fence.
On the other hand, the defendants' witnesses testified that the fence had been there for more than 50 years and that everybody considered the fence to be the boundary line and that the Gordons and their predecessor in title had cultivated the land up to the fence under claim of ownership.
One of defense witnesses testified that she had worked as a young girl for the plaintiffs' predecessors in title, picking beans and helping in the farm work. She testified that Mr. Ergles, the plaintiffs' predecessor in title, farmed the land up to the fence and she worked for him 15 or 18 years and she knew Mr. Ergles used the same fence as the line. Also, that Mr. Ergles bought the land from Mr. Green Johnson and that Mr. Johnson had been there over 40 years "on that same line." She also testified that it was agreed by everybody that this fence was the line and respected it as such. How she knew all this was never questioned by the plaintiffs nor did they offer any evidence to refute the truth of such statement.
The plaintiff, Thelma E. Johntry, was the daughter of Mr. Ergles, and the fence in question was there when he conveyed to his son-in-law and daughter the property described as Government Lots 21 and 22, supra. The Johntrys do not claim that they ever considered the fence as a boundary line or not until Owens-Illinois Co. had a survey run on adjacent land about 1960 or 1961, which showed a section line in conflict with the fence line as a boundary.
The plaintiffs offered in evidence, over the objections of the defendants, a plat showing a proposed subdivision of Lot 22, which also showed the section line between Sections 18 and 19. The witness admitted that he did not run the lines of the survey and was not present when they were run. It is immaterial to our decision in this case, but the plat was clearly inadmissible by this witness as hearsay evidence. This witness, however, did not refute nor attempt to refute the evidence as to the fence being there or how long it had been there. In fact, he could not locate on the plat just where the disputed land lay. His testimony was of little or no probative value other than to show where the government survey line was, and even this was based primarily upon acceptance of a section corner established by another surveyor, a Mr. W.K. Daughtry, made in 1963. The other witness for the plaintiffs was Wilbur L. Johntry. He never disputed the fact that the fence had been there about 52 years. He did admit that his first claim to the defendants that the fence was not the correct boundary line came after the Owens-Illinois survey, which was 1963. No rebuttal of the defendants' witnesses and testimony was offered. The defendants placed in evidence pictures showing old fences and their locations which show, even to us, that said fences *64 had been there a long time. These fences were identified by the witness taking same to be located on the disputed boundary line.
The trial court granted first a temporary injunction and later a permanent injunction against the defendants. It appears to us that the plaintiffs relied upon the survey line as their sole claim of right to the injunction, whereas the defendants, admitting that they saw the line as established by Owens-Illinois, put there about 1963, claimed that the Owens-Illinois line "messed up" the boundaries, and then proceeded to establish the fence as the boundary by reason of agreement, express and implied, as well as by acquiescence for some 30 to 50 years, as well as adverse possession for more than 29 years.
We believe, and so hold, that title and boundary line between adjoining property, may be resolved by a line agreed upon to be the true boundary line, regardless of the description contained in the deed as related to the earliest government survey lines, by estoppel or acquiescence or by written agreement, verbal agreement, or even by implied agreement, if the conduct of the parties is such as to support the same.
In 4 Fla.Jur. page 588, we find what we hold to be the law in this case, as follows:
"* * * Where a boundary line between adjoining properties has been established by agreement and acquiesced in and recognized over a great number of years by the respective landowners and their predecessors in title, the enforcement of such agreement does not depend upon establishment of adverse possession."
Such boundary line followed by actual occupation and recognition or acquiescence therein as was true in the case sub judice, especially as to the predecessor in title of the plaintiffs, is binding upon the parties and their successors in title.[1] We find such boundary to have been so established in the case sub judice and that the plaintiffs are precluded by the conduct and acquiescence of their predecessors, at least, from claiming said boundary line, fixed by the long established fence line, and thus recognized is not the true one, although such line may not be in fact the true one according to the descriptions in their deeds or other instruments of conveyance.
It is clear to us from the record of the evidence before us, that the defendants overwhelmingly established the fence in question, (the old fence, not the one put there by the plaintiffs as of a recent date) as the correct boundary of the defendants' property. Therefore, the decree granting the permanent injunction and fixing costs is hereby reversed and set aside with directions to enter a proper decree dismissing the complaint with prejudice or as the trial court may determine, so long as it recognizes the validity of the defendants' claim of ownership.
We further find that the defendants were damaged by the taking of their bean crop, from which the plaintiffs admit obtaining some $600.00. We therefore determine and so hold that the defendants are entitled to damages against the plaintiffs for the $600.00. Because of the vagueness of proof of any other damages, the defendants' claim thereto is denied.
The plaintiffs' effort to distort the rights of the defendants because an administrator had not been appointed for the estate of Roy Gordon, deceased husband, in whose name the title reposed, is wholly without merit.
For the reasons stated, said cause is Reversed and Remanded with instructions to *65 the lower court to enter such order or orders as may be necessary to fully effect the terms of this decision.
WIGGINTON, C.J., and SPECTOR, J., concur.
NOTES
[1] Williams v. Pichard, 150 Fla. 371, 7 So.2d 468 (1942); Euse v. Gibbs, 49 So.2d 843 (Fla. 1951).