237 So.2d 26 (1970)
Travis Von KING and Grace Etoyle King, Husband and Wife, Appellants,
v.
Raymond CARDEN and Mary Frances Carden, Husband and Wife, and H.L. Pittman, Appellees.
No. L-450.
District Court of Appeal of Florida, First District.
June 18, 1970.
Rehearing Denied July 17, 1970.
*27 Barne J. Morain, Pensacola, for appellants.
Cecil C. Jackson, Pensacola, for appellees.
RAWLS, Judge.
Appellants-plaintiffs, the Kings, appeal a final judgment in an ejectment suit. As to the parcel involved in this appeal, the trial judge found that the Kings and defendant, Pittman, by acquiescence and agreement established the west line of the King property along an existing fence.
The sole question presented is: Do the facts support a finding of acquiescence and agreement?
In the year 1948 one H.L. Pittman purchased twelve acres of land from J.A. Bell. At that time Myron C. Jennings owned twelve and one-half acres lying to the east of Pittman's twelve acres. Pittman testified that he and Jennings agreed that Jennings's west fence would be their common boundary line, and between 1948 and 1953 they jointly maintained the fence that separated the two parcels. Subsequently in 1953, Pittman purchased from Jennings the twelve and one-half acres abutting Pittman's east line, which included the mentioned fence. This transaction resulted in a merger of the two parcels into one ownership by Pittman. Prior to 1956 Pittman sold the easterly twelve and one-half acre parcel to a Mr. Smith by contract for deed which was assigned to the Kings. As to this transaction the following question was asked Pittman: "Then I believe Mr. King paid out the contract and you gave him a deed, according to the chain of title as outlined by the Plaintiffs, in 1956?", and he answered, "Yes * * * But there was a little difference there now. I didn't know anything about that for a couple of months * * * I gave the deed and the abstract to the bank. I never gave Mr. King nothing."
Thus, in 1956 the two parcels constituting approximately twenty-four and one-half acres had merged into the ownership of Pittman, who conveyed the eastern twelve and one-half acres to King. This conveyance described King's western boundary as a quarter section line. In order to contain their livestock the Kings repaired the existing fence, which was later determined not to be on the true line. There was no disagreement or controversy over the subject lines until approximately one year prior to this suit being filed, when King's eastern and southern neighbors had a survey made disclosing that the fences as located were well over on their property. The Kings had their property surveyed and found that all four fences enclosing it were not on the line. By mutual agreement, the fences on King's south and east lines were relocated to the true line resulting in a loss of property by the Kings. When King began to move his west and north fences to the surveyed line, he met with resistance from Pittman and Blum.
This suit was brought to recover a strip of land on the north side from Blum and a western strip from Pittman (and his successors in title) of 33.5 feet to 46 feet wide and 550.4 feet long. As to the northern boundary the trial judge found for King, *28 and this strip is not involved in this appeal. As to the western strip the trial judge found that by acquiescence and agreement, King and Pittman had established the west line as the existing fence line, and denied ejectment.
In the absence of an instrument in writing, lands may sometimes be acquired through the acts and conduct of abutting property owners which require the application of an equitable estoppel. The general principles of law that have evolved under this doctrine have been characterized as (1) adverse possession, (2) boundary by agreement, and (3) boundary by acquiescence. The doctrine of adverse possession has not been invoked in the instant cause so it will not be considered. Boundary by agreement requires allegation and proof of three elements: 1. Uncertainty or dispute as to the true boundary, 2. An agreement that a certain line will be treated by the parties as the true line, and 3. Subsequent occupation by the parties in accordance with that agreement for a period of time sufficient to show a settled recognition of the line as the permanent boundary.[1] Boundary by acquiescence involves at least two elements: 1. A dispute from which it can be implied that both parties are in doubt as to the boundary, and 2. Continued occupation and acquiescence in a line other than the true boundary for a period of more than the statute of limitations.[2] Therefore, a salient element that requires proof for either the doctrine of boundary by agreement or boundary by acquiescence is a dispute between the abutting property owners as to the boundary line.
McRae Land and Timber Co. v. Ziegler[3] held:
"It is clear that coterminous landowners cannot conclusively establish as a boundary between their lands a line which they know not to be the true one, except by an agreement in writing based on a proper consideration, and containing words of conveyance, unless a true line is uncertain or disputed."
In the instant case there is no evidence of a prior dispute or an agreement that would satisfy the requirements for boundary by agreement. The only evidence as to any agreement of a line other than the true line is Pittman's testimony that he and his predecessor in title had agreed that the subject fence would be the boundary. When Pittman purchased the Jennings's twelve and one-half acres, the two parcels of land merged into one ownership. Pittman's contract of sale for the twelve and one-half acres, which had at one time been owned by Jennings, did not describe a fence as the line. It described the controverted line as a quarter section line. As stated in Watrous v. Morrison, supra, it is the survey that actually runs on the ground that governs. There is not one scintilla of evidence that King or his conduit of title, Smith, made any agreement with their predecessor in title, Pittman, as to the fence being the line. Pittman conveyed to King certain land by a good and sufficient description. In this proceeding Pittman asserts that a fence represents the line because he and his predecessor in title agreed to same. Pittman cannot assert an undisclosed oral agreement between himself and his predecessor in title to negate the description in his deed to King.
As to the question of acquiescence, this record does not contain proof of the element of dispute nor the proof necessary to support a finding that King, by his actions and conduct, is estopped from asserting the true line. If an estoppel is to be *29 invoked, it should be against Pittman, the owner of twenty-four and one-half acres of land, who by warranty deed conveyed to King a portion thereof described by government survey lines. As to defendant Carden, his predecessor in title is also Pittman and his conveyance is likewise based upon the legal description of the subject quarter section line. Since King and Carden deraign their titles from a common source, and since the evidence reflects no previous dispute between either King and Pittman or between King and Carden, there are no acts of acquiescence that would change the boundary described in their respective conveyances, and the true line should prevail.
Reversed.
SPECTOR, J., concurs.
JOHNSON, C.J., dissents, with opinion.
JOHNSON, Chief Judge (dissents).
I cannot agree with the majority opinion in this case. I think the trial court was correct and the order appealed from should be affirmed. The majority opinion indicates that a dispute must be in existence between abutting property owners before an agreed line or acquiescence can be invoked. Such dispute does not need to be an overt one. Further, in this case there was evidence to the effect that a prior licensed surveyor had surveyed the lands in question many years prior to the last survey which created this squabble and that the fences in question were built at that time based primarily upon this former survey. The fact that a subsequent surveyor finds new or different locations for the land lines does not necessarily render the latter any more accurate than the former. Also, these former lines had been acquiesced in and accepted by the parties and their predecessors in title as the established boundaries.
The mere fact that a subsequent owner wants to accept a subsequent survey which did not even enter into his consideration when he purchased the property from a predecessor who had accepted, enjoyed and acquiesced in the old or former lines, is insufficient to upset such lines, and this is true even though some of the affected parties do accept the new lines which necessarily may reduce the quantity of land left for the party caught in the middle.
As pointed out by this court in Williams v. Johntry, 214 So.2d 62, title and boundary lines between adjoining properties, may be resolved by a line agreed upon to be the true boundary line, regardless of the description contained in the deed as related to the earliest government survey lines, by estoppel or acquiescence or by written agreement, verbal agreement or even by implied agreement, if the conduct of the parties is such to support the same. I think this is just what the trial court found and decreed and I would therefore affirm.
NOTES
[1] Watrous v. Morrison, 332 Fla. 261, 14 So. 805 (1894), and Reil v. Myers, 222 So.2d 42 (Fla.App. 4th 1969).
[2] Holley v. May, 75 So.2d 696 (Fla. 1954); McRae Land & Timber Co. v. Ziegler, 65 So.2d 876 (Fla. 1953); James W. Day, The Validation of Erroneously Located Boundaries by Adverse Possession and Related Doctrines, 10 U.Fla.L.Rev. 245 at 265.
[3] McRae Land & Timber Co. v. Ziegler, 65 So.2d 876 (Fla. 1953).