281 So.2d 410 (1973)
Robert G. KERRIGAN and Sharon S. Kerrigan, His Wife, Appellants,
v.
Howard THOMAS and Shirley M. Thomas, His Wife, Appellees.
No. Q-402.
District Court of Appeal of Florida, First District.
July 17, 1973.
Rehearing Denied August 31, 1973.
*411 Gene D. Brown, Tallahassee, for appellants.
Thomas J. Kennon, Jr., Airth, Sellers, Lewis & Kennon, Live Oak, for appellees.
POWELL, GILLIS E., Associate Judge.
This appeal involves a title suit to the following described property:
The South 9 1/4 acres of the N 1/2 of Lot 1, Section 34, Township 4 South, Range 12 East, located in Suwannee County, Florida.
Appellants Kerrigans, as plaintiff below, sued in ejectment. Appellees Thomases defended upon adverse possession and title by acquiescence. The parties waived a jury and the trial judge found that the Thomases had established said defenses and entered a judgment vesting title in them. This appeal ensued.
The judgment appealed from recites a number of findings of fact, the following of which have been summarized as material.
1) The fence, on the northern boundary of the 9 1/4 acre parcel since prior to 1946 and continuously until 1967, had been recognized and regarded by the parties and their predecessors in title as the boundary line.
2) In 1965, the Thomases applied for a mortgage loan and an attorney informed them that they did not have a record title to the 9 1/4 acres and advised them to acquire a quit-claim deed from the Kneeshaws, who were predecessors in title of the Kerrigans. The Kneeshaws declined to execute a quit-claim deed and had the land surveyed, a copy of which was received in evidence.
3) Prior to 1965, the Kerrigans' property was assessed as "NE 1/4 of NE 1/4 or *412 North 1/2 of Lot 1," containing 40 acres of land and taxes paid were calculated by multiplying the millage rate for each year by 40 acres.
4) In 1965, Kneeshaw filed a different return, namely, the "NE 1/4 of NE 1/4 and North 9 1/4 acres of SE 1/4 of the NE 1/4 of North 1/2 of Lot 1, Section 34, Township 4 South, Range 12 East, containing 49 1/4 acres."
5) Since prior to 1946, taxes on other lands of the Thomases and their predecessors in title were calculated by including the 9 1/4 acres in question in their total acreage assessment on which their taxes were computed.
6) Each time the Thomases' property changed hands since prior to 1946, the sellers represented to the buyers that the fence along the north boundary of the land purchased was the boundary line between the land they were acquiring and the land owned by the Kerrigans and their predecessors in title.
7) Since prior to 1946, upon purchasing the land, the Thomases and their predecessors in title went into possession both of the land described in their deed, as well as the disputed strip, and have continuously occupied it under a claim of right from that time.
8) On or about November 27, 1967, Erma Mae Kneeshaw, the widow of Ralph Kneeshaw, conveyed the lands in question and other adjoining lands to the Kerrigans, who filed this ejectment action in August of 1969. The Kneeshaws never asked the Thomases to vacate the 9 1/4 acres in question, never exercised any control over the said land, and never went into possession.
9) Since prior to 1946, the 9 1/4 acres have been enclosed by a substantial fence, which enclosed said land along with adjacent property owned by the Thomases and their predecessors in title, and the Thomases and their predecessors have been in open, actual, notorious, exclusive, uninterrupted, peaceable and adverse possession of the 9 1/4 acres in question, cultivating said land, planting crops, pasture grass, mowing, fertilizing and otherwise caring for the property.
The thrust of the appellants' appeal is that the findings by the trial judge are not supported by the evidence and that the judgment is contrary to the law.
Appellants correctly emphasize that a party claiming title by adverse possession bears a heavy burden of proof and cites Downing v. Bird, 100 So.2d 57, 64 (Fla. 1958), in which the Florida Supreme Court said:
"Further in either prescription or adverse possession, the use or possession is presumed to be in subordination to the title of the true owner, and with his permission and the burden is on the claimant to prove that the use or possession is adverse. This essential element as well as all others must be proved by clear and positive proof, and cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture." (Emphasis supplied.)
Also see, F.S., Sec. 95.13, F.S.A.
Appellants are further correct in enumerating the three essential elements to establish boundary by agreement as set forth by this Court in King v. Carden, 237 So.2d 26 (Fla.App. 1970), namely: uncertainty or dispute as to the true boundary, an agreement between the parties as to a certain line, and subsequent occupation accordingly by the parties, sufficient in time to show a settled recognition of the agreed line as the permanent boundary. The cited opinion further states that "Boundary by acquiescence involves at least two elements: 1. A dispute from which it can be implied that both parties are in doubt as to boundary, and 2. Continued occupation and acquiescence in a line other than true *413 boundary for a period of more than statute of limitations." Also see 4A Fla.Jur. pp. 757-764.
The disputed 9 1/4 acres are part of the North 1/2 of Lot 1, Sec. 34, T4S, R12 East. Lot 1 contains 98 1/2 acres according to the government survey plat in evidence. Obviously, according to the record title, the owner of the North 1/2 of Lot would own 49 1/4 acres and the owner of the South 1/2 of lot would own 49 1/4 acres. The disputed 9 1/2 acres is the South 9 1/4 acres of the North 1/2 of Lot 1. See the following sketch.

Secs. 95.16 and 95.17 of our statutes define adverse possession with color of title and Secs. 95.18 and 95.19 define adverse possession without color of title. One of the basic distinctions, of course, is that under possession without color of title, the adverse owner must return the property to the county tax assessor within one year after entry thereon and pay all taxes thereafter levied and assessed. Adverse *414 possession under color of title must be based upon a written instrument or judgment or decree of a competent court. Sec. 95.16 provides:
"Whenever it appears that the occupant, or those under whom he claims, entered into possession of premises under claim of title exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree, or judgment for seven years, . .."
The key statutory provision in the case at hand is the "exception clause" contained in Sec. 95.17(2), which provides that the color of title requirement may be satisfied:
"Where it has been protected by a substantial enclosure. All contiguous land protected by such substantial enclosure shall be deemed to be premises included within the written instrument, judgment, or decree, within the purview of Sec. 95.16." (Emphasis supplied.)
The essential element is "substantial enclosure" and appellants strongly urge that the evidence is insufficient to satisfy this requirement. Appellants argue that the fence, along the northern line of the disputed property, contains a 16 foot gate that was not kept up; that it was not a functional gate, but instead an open passage-way; that the evidence was insufficient as to who originally constructed the fence other than it was erected in the early 1940's; that there was insufficient evidence to show that the Thomases' entire tract of land was completely enclosed by a fence and certainly the evidence did not clearly establish that their entire tract of land was enclosed by a "substantial" fence, citing Adams v. Fryer, 59 Fla. 112, 52 So. 611 (1910), to the effect that the Florida Supreme Court said that the enclosure must be at least sufficient to turn cattle. We observe, at this point, that the question of "substantial enclosure" is a matter for the jury to determine, Wicker v. Williams, 137 Fla. 752, 189 So. 30, (1939). Appellants take the position that according to Judge Wigginton, in the case of Kiser v. Howard, 133 So.2d 746 (Fla.App. 1961), that Sec. 95.17(2) has been "inferentially" repealed by judicial decree in the Second District case of Blackburn v. West Coast Land & Develop. Co., 109 So.2d 413 (Fla. App. 1959). A closer reading of Judge Wigginton's opinion reveals that he stated just the opposite.
On the other hand, the Thomases both testified that they purchased the land through Realtor Carl A. French, who was a director and stockholder in Suwannee Belle, Inc., predecessor in title; that French flew them and drove them over the property in 1960; that they signed papers and placed a deposit on the land in December, 1960, moved cattle there after the grass started growing in 1961, and moved onto the property with their children in August, 1961, placing their children in school at such time; that at the time of the inspection of the property, they had an aerial photograph with the boundary lines marked, which photograph or duplicate thereof was received in evidence and that Realtor French pointed out the boundaries of the property, including the fence across the north boundary of the disputed land; that they went into possession thereof, maintained the fence, used it for pasture land for cows, fertilized it, mowed it, treated it the same as any other land that they owned and that no one asserted any claim until they asked the Kneeshaws for a quit-claim deed in 1965.
Further that their deed described the disputed strip as follows:
"All of the land owned by Suwanee Belle, Inc. lying N of a certain County grade road known as Suwannee Drive in the SE 1/4 of the NE 1/4 of Section 34, Township 4S, range 17E."
which constituted one parcel in the total of about 540 acres purchased.
*415 A witness for the Thomases, named Walter Warren, testified that he went to work for one B.B. Saunders, now deceased, in 1946, who was a predecessor in title of the Thomases; that the fence on the north boundary of the disputed property was there when he went to work; that in about 1949 or 1950 he planted tobacco on the disputed strip, planted peanuts the next year, the following year planted pasture and that the land has been used for pasture ever since; that B.B. Saunders claimed the disputed strip and that Saunders identified the fence as the north line, specifically pointing out that said fence was tied on to "big old lighter stob."
Another area of sharp dispute between the parties is the history of the tax assessment and payment of taxes on the land in question. William Hubbard Gray, who has been tax assessor of Suwannee County since 1949, testified at length through deposition. He testified that when B.B. Saunders recorded his deed in 1948 in Deed Book 73, at page 364, that his deed contained the description, "South 1/2 of Lot 1, Section 34, Township 4 South, Range 12 East" and that the tax assessor had assessed Saunders with 58 1/2 acres on that description; that since he took office in 1949, the North 1/2 of Lot 1, owned by appellants, had been assessed as the "NE 1/4 of the NE 1/4 or the North 1/4 of Lot 1, Section 34, Township 4 South, Range 12 East," up to the year 1965 and that the said description was assessed as 40 acres. Tax receipts, in evidence, as far back as 1943, further show this assessment as 40 acres. In 1965, upon the request of Ralph Kneeshaw, tax assessor Gray changed the assessment to read "NE 1/4 of the NE 1/4 and the North 9.25 acres of the SE of the NE or the North half of Lot 1" and changed the acreage computation to read 49 1/4 acres. He further testified that sometime in the 1950's, but couldn't recall the exact year, B.B. Saunders came into his office pertaining to the assessment of the 9 1/4 acres in dispute and stated that he had been using the property for several years; that it was within his fence and he wanted to make a return and pay taxes on it, but that he refused because Saunders could not show him a deed describing the said property.
Appellants further argue, at length, that the evidence is insufficient to show an adverse claim by the Thomases and their predecessors, and allege that the use was permissive. The weight of the evidence seems to show that the permissive use of the land applied to the 120 acres owned by the Kerrigans and their predecessors, which was generally referred to through the years as "free-land" and did not include the 9 1/4 acres in dispute.
Finally, appellants argue that Suwannee Belle, Inc., immediate predecessors in title of the Thomases, claimed only the land to which they had legal title, thus did not claim adversely and thus interrupted the necessary time of adverse claim and that the Thomases could not tack on accordingly. This contention is based upon the testimony of the aforementioned witness, Carl French. In this connection, Mr. Thomas testified as follows:
"Q: Would you point out to the, on Plaintiffs' Exhibit No. 1 here if you would, the property that you purchased?
A: Well, we were both up here, Carl French and, of course, it's common or proper I guess for a realtor to take people on the property and show them where the property is which is what Carl did.
Q: All right?
A: He showed us a piece of property here bounded by a Section line and showed us where it come across, took us across to the hammock here, in the northwest corner, he explained to us the corner down in the hammock, of course, we couldn't come through here, so we come back and drove through this pasture.
Q: All right?

*416 A: He stated that the line of trees, which you can see a line of trees from a distance, but you have got those trees up to the fence and he says, `This is the north property line, but your corner is in the hammock.'
Q: All right?
A: We drove through this property here to this back corner, we couldn't come through here, we had to come back around here, but he did designate the outside boundary of the land that we purchased from him.
Q: Now, the nine acres in dispute here today, is that included in the tract of land that he showed you?
A: Yes, it's all in pasture.
Q: What use did you make of the nine acres?
A: We ran cows on it and when you run cows on pasture, you need to fertilize it, mow it, maintain the fence, and this is what we did it was our property"
We note that the record title of B.B. Saunders, predecessor in title to the Thomases, existed from 1948 to 1956; that the Thomases entered possession in 1961 under a contract, having paid a deposit in the latter part of 1960. The contract was not introduced in evidence but witness, Carl French, read the description conveyed to them from the contract. We hold that there is sufficient evidence in the record to substantiate the trial judge's finding that there was sufficient time of adverse holding with sufficient privity to satisfy the statutory period.
Appellants seem to concede that the application of the law by the trial judge would be correct if there was sufficient evidence to show his findings of fact, but strongly argue that the evidence is wholly insufficient. The argument of counsel for the appellants is ably presented and very persuasive. However, a careful study of the transcript of the testimony and an examination of the evidentiary exhibits show sufficient overall evidence to support the conclusion of the trial judge in vesting title in the Thomases. See Williams v. Johntry, 214 So.2d 62, (Fla.App. 1968), Kiser v. Howard, supra, and Seaboard Airline R. Co. v. California Chemical Co., 210 So.2d 757 (Fla.App. 1968), all opinions from this Court.
The other point raised on appeal is that appellants were denied the opportunity of presenting oral argument and especially closing argument. We do not consider this reversible error in this case.
We are not unmindful of the recent decision rendered by the Supreme Court in the case of Meyer et ux. v. Law et ux., Fla., Case No. 42,788, opinion filed July 5, 1973, but not yet reported. We distinguish the case sub judice from the Meyer case in that in Meyer the disputed land was neither described in any recorded instrument, was not returned for taxation by a proper description, nor were taxes on such land paid by the party claiming title through adverse possession. In the case sub judice however, the parcel of land claimed by appellee-Thomas was described on the tax rolls as containing 58 1/2 acres which included the 9 1/4 acres lying in the disputed strip involved in this case and on which 9 1/4 acres Thomas and his predecessors in title have paid taxes regularly since prior to the year 1946.
The judgment of the lower court is hereby affirmed.
RAWLS, C.J., and WIGGINTON, J., concur.