COBB, Judge.
The dispute eventuating in the present appeal originated in an ejectment action filed by Fred and Doris Harpster against the appellant, Sarah Jane Seddon, their neighbor to the east, and a consequent cross-claim filed by the latter against Glenn and Helene Edmondson, the neighbors to the east of her property.
The Harpsters claimed that, according to their survey, Seddon was encroaching upon the eastern portion of their property, rural land situate in the northwest quarter of Section 19, Township 17 South, Range 27 East, in Lake County, Florida. The basis of the Harpster argument was that the boundaries of Section 19 were east of the location previously understood by the various landowners in the area. The Harpsters owned only in the northwest quarter section of Section 19 (insofar as the dispute with the parties to this appeal is concerned). Seddon held record title to the west one-half of the northwest quarter of the northeast quarter of Section 19, while the Edmondsons held record title to the east half of the northwest quarter of the northeast quarter of Section 19. Thus, according to their respective legal descriptions, the north-south midsection line of Section 19 was the common boundary between the Harpster and Seddon properties.
The Harpsters, Edmondsons, and Seddon stipulated that trial of the Seddon cross-claim against the Edmondsons would be deferred until completion of the original ejectment action by the Harpsters against Seddon. Presumably, conclusion of that action in favor of Seddon — i.e., a judicial determination that Section 19 was in fact located as previously assumed — would have rendered moot the cross-claim against the Edmondsons. But that was not the outcome. The trial court held that Seddon was wrongfully occupying land belonging to the plaintiff Harpster, thereby placing the midsection line of Section 19 some 400 feet east of the line Seddon contended was her western boundary. That judgment was affirmed by the Second District Court of Appeal. Seddon v. Harpster, 369 So.2d 662 (Fla. 2d DCA 1979). On certification, the opinion of the district court was approved by the Florida Supreme Court. Seddon v. Harpster, 403 So.2d 409 (Fla. 1981).
Accordingly, the cross-claim by Seddon against the Edmondsons [1] was then tried, and decided by the trial judge adversely to Seddon on defenses raised by the cross-defendants: “Estoppel, acquiescence and boundary by agreement.” The trial court recited in its final judgment that it was relying upon the principles enunciated in King v. Carden, 237 So.2d 26 (Fla. 1st DCA 1970), and Williams v. Johntry, 214 So.2d 62 (Fla. 1st DCA 1968). This appeal by Sarah Jane Seddon ensued.
At trial, the Edmondsons attempted to establish their defenses of boundary by agreement and boundary by acquiescence, each of which requires the existence of a boundary dispute between adjoining owners as a predicate, by the introduction of an exchange of letters between themselves and the cross-claimant’s father, William T. Sed-don, who had originally been the title holder to the Seddon property but was deceased at time of trial. It also should be noted that this trial occurred on September 13, 1978, prior to the effective date of the Florida Evidence Code. In re Florida Evidence Code, 376 So.2d 1161 (Fla.1979). The “dead man’s statute” then in effect, and applicable to these trial proceedings, was section 90.05, Florida Statutes (1977).[2]
*997 The disputed admission of Seddon’s letter is illustrated by the following portion of the trial transcript during the direct examination of Mrs. Edmondson:
Q. At the time the Seddons bought a portion of the property adjacent to your property, did you have occasion to have any correspondence with reference (sic) the boundary line?
A. Yes, sir. We received notification from the Court Clerk that the Seddons had purchased the adjacent property. One of the neighbors told us, in erecting his fence, Mr. Seddon may have gone over our boundary. We wanted to verify who owned the property and whether the boundary was as described.
* * * ^ * *
Q. And you had some doubt as to whether the fence was located on the property line?
A. Right. One of the neighbors told us someone had bought that property and had fenced it in our absence.
Q. Did you have any correspondence with the Seddons?
A. Yes.
Q. I hand you a copy of this letter, which purports to be under your husband’s signature' — can you identify that?
A. I typed it for his signature.
Q. Do you know as a matter of fact that he signed it?
A. Yes, sir.
Q. Do you know as a matter of fact that it was mailed?
A. Yes, sir.
Q. And that’s addressed to Mr. W. T. Seddon?
A. Right.
4c * Ht * * *
(EDMONDSON’S COUNSEL): Would like to offer this as cross defendant’s 3.
(SEDDON’S ATTORNEY): Object to this letter. It doesn’t appear to be an original, which would be the best evidence, and I have another copy of this letter that doesn’t appear to be the same as the letter being introduced. There is a signature on this letter that does not appear on my photocopy of the same letter provided me by [Edmondson’s counsel],
(EDMONDSON’S COUNSEL): Quite obviously we wouldn’t have the original, it was sent to Mr. W. T. Seddon. We allege certain affirmative -defenses, one of which necessitates the demonstration to this court that there was a question of where the property land was when they had communication relating to it, and that’s what this document is for.
THE COURT: Have you questioned your witness as to where the original is?
(EDMONDSON’S COUNSEL), continuing:
Q. Do you know where the original of the letter that I just showed you is?
A. No, I don’t but I got a reply to it.
Q. You know as a matter of fact it was mailed to Mr. W. T. Seddon?
A. Yes, and I did get a reply from him, responding to this letter.
Q. You don’t have the original in your possession?
*998 A. It should be in their file.
THE COURT: Objection overruled.
(EDMONDSON’S COUNSEL), continuing:
Q. I hand you a second letter addressed to M/Sgt. Glenn L. Edmondson, can you identify that letter?
A. Yes I can.
Q. You know for a fact it was received? A. Yes, it has been in our file.
Q. You received it, you identified it, you read it?
A. Yes, sir.
Q. This is from William T. Seddon?
A. It is signed by him.
Q. Subsequent to that letter, did you have any conversation with Mr. Seddon relating to the contents of these letters and the fences and common boundary, etc., between your properties?
A. Yes.
Q. You know as a matter of fact that he wrote that letter?
(SEDDON’S ATTORNEY): Object, Hearsay Rule and Dead Man’s Statute. Mrs. Edmondson cannot testify as to what Mr. Seddon said and actually did tell her.
(EDMONDSON’S COUNSEL): I don’t know we elicited any statements as to what he said, but only to the degree this is identified as having been received, and subsequent conversations.
(SEDDON’S COUNSEL): It’s the subsequent conversations I object to. We have no way of cross-examining him or eliciting anything from him to find that out.
(EDMONDSON’S COUNSEL), continuing:
Q. You have identified the previous exhibit as the letter going to Mr. W. T. Seddon?
A. I have.
Q. This exhibit I have just furnished you, purporting to be a letter from Mr. W. T. Seddon — did you receive that?
A. Yes, in the mail.
* * * * * *
Q. The letter itself responds in kind to the same information contained in the previous letter mailed to Mr. Seddon, does it not?
A. Right.
(SEDDON’S ATTORNEY): Object to that last question, until it is admitted in evidence. I don’t believe the witness should be able to testify to what is not on the record.
THE COURT: Will admit into evidence.
(SEDDON’S ATTORNEY): Object to admitting it into evidence as hearsay and Dead Man’s Statute.
(EDMONDSON’S COUNSEL): Your Honor, I don’t believe the Dead Man’s Statute is applicable here, and even if it is, it does not apply to documentation. (Emphasis added.)
The letter from the deceased Seddon was admitted despite the objection based upon the Dead Man’s Statute. The exchange of letters between Edmondson and Seddon served as the basis for the implied finding by the trial court of the existence of a dispute in regard to the Seddon-Edmond-son boundary and an agreement resolving that dispute. The doctrines of “boundary by agreement” and “boundary by acquiescence” share a common element: the existence of uncertainty or dispute or doubt over the location of a common boundary. Kerrigan v. Thomas, 281 So.2d 410 (Fla. 1st DCA 1973); King, 237 So.2d at 28; Rei v. Myers, 222 So.2d 42 (Fla. 4th DCA 1969).
It is clear that Mrs. Edmondson was an “interested person” under the applicable statute, since she would gain or lose by direct legal operation and effect of the judgment. See Broward Nat’l. Bank of Ft. Lauderdale v. Bear, 125 So.2d 760 (Fla. 2d DCA 1961). The letter from Seddon was part of a “transaction or communication” between the witness and the deceased, and the objection was made on behalf of the decedent’s daughter, appellant herein, who was qualified under the statute to raise the objection as the next of kin, heir at law and devisee of the decedent. Hinson v. Hinson, 356 So.2d 372 (Fla. 4th DCA 1978). Therefore, it was error for the trial court to admit the Seddon letter over timely objection.
*999 Moreover, even if the Seddon letter had been properly before the trial court, the evidence was insufficient to establish the requisite dispute or uncertainty between abutting owners. Mrs. Edmondson testified that neighbors had informed them (at the time the Edmondsons were living in Maryland) that Seddon had erected a fence which possibly encroached on their property. Mr. Edmondson wrote from Maryland to Seddon inquiring as to whether the fence was on Edmondson property. Nothing in the letter indicates any uncertainty or dispute as to the location of the boundary. Seddon replied that he had erected the fence within his own property line based upon his survey. The reply letter to Seddon from Edmondson was merely a thank-you letter of acknowledgment.
Neither party to this exchange recognized any doubt or dispute as to the location of the proper boundary, nor that Seddon’s fence was an intended compromise thereof, nor even that the Seddon fence was located on the boundary line between the two properties. Without such dispute or uncertainty, the defenses of boundary by agreement and boundary by acquiescence must fail. Holley v. May, 75 So.2d 696 (Fla.1954).
In order to establish a boundary by acquiescence, in addition to the necessity of showing a dispute or uncertainty, it must be shown that there was continued occupation and acquiescence in the line for a period of the statute of limitations. King, 237 So.2d at 28. Even if the court had had sufficient evidence from which to have found a disputed or uncertain boundary line, and the establishment of a fence purporting to be on the boundary line, the evidence in regard to continued occupation of the disputed property would not meet the time requirement applicable to establish a boundary by acquiescence. By Mrs. Ed-mondson’s own testimony, the longest that she and her husband could have claimed occupation was subsequent to 1973, some two years prior to the institution of suit.
The facts in the case of Florida Ranchettes, Inc. v. Hull, 331 So.2d 348 (Fla. 1st DCA 1976), are clearly distinguishable from the facts herein. In that case, Carpenter learned in 1953 that he had been mistaken about his true boundary line when he had constructed his fence six months earlier. However, he did nothing about it. Even when his neighbor, Florida Ranchettes, Inc., constructed a canal and road on his property, he did nothing. Sometime thereafter, he remarked to a Florida Ranchettes official that they could have his property as long as he could use the road. In 1968 his successor in interest took physical action claiming property to the true boundary. The court found a boundary had been established by acquiescence.
In the instant case, unlike the Hull ease, Seddon at no time agreed to give up land to the Edmondsons. Neither the appellant nor her predecessor in interest had knowledge of the encroachment by the Edmondsons until 1975, when suit for ejectment was immediately filed.
As for the reference in the judgment to the element of “estoppel,” thereby implying that such may be separate and discrete from the other doctrines referred to in the judgment, we agree with the analysis of the First District Court of Appeal enunciated in King:
In the absence of an instrument in writing, lands may sometimes be acquired through the acts and conduct of abutting property owners which require the application of an equitable estoppel. The general principles of law that have evolved under this doctrine have been characterized as (1) adverse possession, (2) boundary by agreement, and (3) boundary by acquiescence. The doctrine of adverse possession has not been invoked in the instant cause so it will not be considered. Boundary by agreement requires allegation and proof of three elements: 1. Uncertainty or dispute as to the true boundary, 2. An agreement that a certain line will be treated by the parties as the true line, and 3. Subsequent occupation by the parties in accordance with that agreement for a period of time sufficient to show a settled recognition of the line as the permanent boundary. Boundary by acquiescence involves at least two ele *1000 ments: 1. A dispute from which it can be implied that both parties are in doubt as to the boundary line, and 2. Continued occupation and acquiescence in a line other than the true boundary for a period of more than the statute of limitations. Therefore, a salient element that requires proof for either the doctrine of boundary by agreement or boundary by acquiescence is a dispute between the abutting property owners as to the boundary line. (Emphasis in original.)
237 So.2d at 28.
As in King, we find no evidence of a prior dispute that would satisfy the requirement for boundary by agreement or by acquiescence.
Accordingly, the judgment of the trial court is reversed, and this case is remanded for entry of a judgment in accordance with this opinion.
REVERSED and REMANDED.
FRANK D. UPCHURCH, Jr., and SHARP, JJ., concur.

. This action was based upon a survey established in the Harpster v. Seddon action and indicated that the Edmondsons were encroaching upon the eastern portion of the Seddon property. Included in this encroachment area are improvements made by the Edmondsons in setting up a nursery valued at approximately $32,000.

. Section 90.05 provided:
No person, in any court, or before any officer acting judicially, shall be excluded from testi- *997 tying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto; provided, however, that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party, or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor, or committeeman shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence.
Unlike section 90.05, its replacement, section 90.602, Florida Statutes (1979), only excludes testimony concerning oral communications. Section 90.05 applies to the instant civil case since the cause of action accrued before July 1, 1979. See In Re Florida Evidence Code, 376 So.2d 1161 (Fla.1979).