490 So.2d 1014 (1986)
Ferrin C. CAMPBELL, Sr., Appellant,
v.
Millicent Pate NOEL, As Personal Representative and Sole Beneficiary under the Will of the Deceased, C. Everett Pate, and C. Thomas Holland, Appellees.
No. BI-64.
District Court of Appeal of Florida, First District.
June 18, 1986.
Rehearing Denied July 22, 1986.
*1015 Law Offices of Ferrin C. Campbell, Sr., P.A., Crestview, for appellant Ferrin C. Campbell, Sr.
Gillis E. Powell, Jr., of Powell, Powell & Powell, Crestview, for appellee Millicent Pate Noel.
C. Thomas Holland, Crestview, for appellee C. Thomas Holland.
SHIVERS, Judge.
This appeal involves a boundary dispute between adjacent landowners and a final judgment by the trial court establishing a boundary in favor of appellees. We affirm on the basis that a boundary existed by agreement.
Appellant Campbell, plaintiff in the trial court, owns the northern half of a 40-acre tract of land. Defendant Pate acquired the southern half of the tract in 1966. Neither Defendant Pate nor Plaintiff Campbell was certain of the location of the common boundary between the two tracts; thus, in 1970, Pate hired Mr. Peaden to survey the land and discover the true boundary. After the survey was performed, Pate erected an east-west fence running the length of the boundary with the exception of the westernmost 250 feet. According to Pate's deposition testimony, he was told at the time of the 1970 survey by Peaden that Campbell had a surveyor named Grice. Pate told Peaden that he wanted the line in the proper location and that Peaden should get with Grice and work it out. Pate later met with Grice and Peaden on Campbell's property and was told that the two surveyors had agreed on a line. Pate stated he then met with Campbell and told Campbell that the surveyors had agreed on the line and that Pate was going to build a fence. According to Pate, Campbell was given a copy of the survey and stated that he would pay for half of the fence. Campbell, on the other hand, stated he did not hire Grice to survey his property until 1975 and that he had merely suggested to Pate in 1970 that Grice might have some information regarding corners and lines.
In either 1972 (according to Campbell's testimony) or 1975 (according to Campbell's son's testimony), Campbell cleared his land, put in a pasture and began keeping cows. Campbell's son extended Pate's fence westward to tie into Campbell's preexisting west fence, and ran a 1,200 foot north-south fence which he tied into the east side of Pate's fence. Campbell patched or repaired the Pate fence several times and at one point ran an electric wire down the fence for two or three hundred feet.
In 1975 Campbell hired Grice to survey his property due to a suspected encroachment by one of his other neighbors. Grice's survey revealed the Pate fence to be about 60 feet too far north on Campbell's property. On August 20, 1975, Campbell advised Pate by letter that there existed a problem with the fence location and requested that they come to an agreement as to the true boundary. Pate testified he referred the letter to his surveyor, who answered it. According to Campbell, a response was never received. In any event, it appears that during the six years between the letter and the filing of Campbell's ejectment suit on December 31, 1981, no action was taken on the letter and both parties continued to use their property up to the fence line.
In January of 1981, appellee Holland bought a portion of the property from *1016 Pate. Pate died in 1984, prior to the trial, and his wife was substituted as appellee. On March 26, 1985, the trial court entered an order finding that a boundary had been established by acquiescence, estoppel, or implied consent, based on the acts and conduct of Campbell and Pate. Campbell now appeals that judgment.
As was explained by this court in King v. Carden, 237 So.2d 26 (Fla. 1st DCA 1970), lands may be acquired by way of the acts and conduct of abutting landowners, requiring the application of an equitable estoppel. Two of those methods of establishing a boundary are (1) boundary by agreement, and (2) boundary by acquiescence. The elements of a boundary by agreement are (1) uncertainty or doubt as to the true boundary; (2) an agreement that a certain line will be treated by the parties as the true line; and (3) the subsequent occupation by the parties in accordance with the agreement for a period of time sufficient to show a settled recognition of the line as the permanent boundary. The elements of a boundary by acquiescence are (1) a dispute from which it can be implied that both parties are in doubt as to the boundary and (2) continued occupation and acquiescence in a line other than the true boundary for a period of more than the statute of limitations. Therefore, the common element of both doctrines is a dispute as to the location of the common boundary.
Although we cannot find a boundary by acquiescence in this case, the record does support the application of the doctrine of boundary by agreement. First, the dispute necessary for a boundary by agreement does not require an open hostility between the parties, but can consist of a mere uncertainty as to the true location of the line. Sanlando Springs Animal Hospital, Inc. v. Douglass, 455 So.2d 596 (Fla. 5th DCA 1984). We find that the record in the instant case supports such an uncertainty. Appellant Campbell conceded in his 1982 deposition that he did not know where the boundary line was at the time Pate had the land surveyed. Pate's uncertainty is evident from the fact that he hired Peaden to locate the boundary prior to building the fence.
Second, although there is no evidence of an express agreement, Campbell's actions in clearing his land to the fence line and in extending, repairing, and utilizing the fence constitute at least an implied agreement to treat the fence as a boundary line. See Watson v. Godwin, 259 So.2d 746 (Fla. 1st DCA 1972).
Third, the evidence indicates that both parties occupied their properties according to the fence line up until the day of the trial. Even if Campbell's 1975 letter could be construed as an end to his acquiescence in the fence as the true boundary, his occupancy according to the fence continued. Thus, the occupancy period lasted at least five years, and arguably longer. Boundaries by agreement have been found in Florida where occupancy was for as little as two years. Reil v. Myers, 222 So.2d 42 (Fla. 4th DCA 1969).
A boundary by acquiescence cannot be found since that doctrine requires continued occupancy and acquiescence in the boundary line for more than seven years. King v. Carden, supra. Assuming that Campbell began occupancy and acquiescence in 1970, the 1975 letter would at least indicate an end to his acquiescence in the fence as the true boundary line.
Accordingly, the final judgment is affirmed on the basis that the parties established a boundary by agreement.
AFFIRMED.
BOOTH, C.J., and WIGGINTON, J., concur.