WENTWORTH, Judge.
Appellant Dial Communications, Inc., seeks review of a judgment and order by which it was ejected from appellees’ property and directed to remove its chain link fence from the property. We affirm.
The appellees Hurst and Whitaker filed a complaint against appellant Dial and appel-lee Southern Bell, lessee of appellant, alleging that appellant had constructed a chain link fence which encroached upon appel-lees’ property. In its answer appellant acknowledged that it had constructed the fence, but denied that the property upon which the fence was erected was owned by appellees. Southern Bell filed a response indicating that it had no real interest in the outcome of the litigation.
The record establishes that the property in dispute was platted in 1912 by the St. Andrews Bay Development Company. The plat purported to subdivide Section 12 into five-acre lots with each lot appearing to abut upon dedicated 30-foot wide streets to the east and north. The east section line for Section 12 was the center line of the abutting street, U.S. Highway 98. The Stricklands in 1946 purchased the west half of the east half of Lot 65 in Section 12. They were shown corner markers which purported to denote the eastern boundary of their property. The markers were located several feet eastward of a barbed wire fence running the length of the lot in a north-south direction. The Fades in 1946 purchased the east half of the east half of Lot 65. The Fades and Stricklands agreed to accept the markers as the true boundary line. They discussed relocating the fence, but the Fades in 1948 sold their interest in Lot 65 to appellee Whitaker and her husband before the fence was relocated. The Stricklands and the Whitakers maintained their properties up to the fence during the 30 years they were neighbors. Appellee *259 Whitaker in 1976 conveyed .a portion of her property to appellee Hurst as follows:
A parcel fronting One Hundred Thirty (130) feet on State Road 22 and One Hundred Forty (140) feet on U.S. Highway 98, said parcel lying in the Southwest corner of the intersection of U.S. Highway 98 and State Road 22 and being a part of the East One-Half (E ⅝) of the East One-Half (E ⅝) of Lot 65 according to plat of St. Andrews Bay Development Company of Section Twelve (12), Township Four (4) South, Range Fourteen (14)....
Hurst had the parcel surveyed by Buell Harper. Hurst thought that the old fence was the western property line for the Whit-akers, but not for his property, which lay within the Whitaker property. In conducting the survey, Harper had to decide whether the east boundary line of Lot 65 lay along the section line in the center of Highway 98, or whether the 15 foot dedication for roadway purposes should be excluded. Harper decided to use the road easement boundary, 15 feet to the west of the center line of Highway 98, as the east boundary of Lot 65. He based his decision in part on the barbed wire fence between the east and west halves of the east half of Lot 65. Harper concluded that the east-west measurement of Lot 65 was 645.15 feet, and that the quarter portions of the lot each measured 161.29 feet from east to west. The Whitakers had conveyed to the state an additional 29.59 feet west of the 15-foot easement boundary along Highway 98 as additional right-of-way. The remaining land in their parcel therefore measured 131.7 feet from east to west.
Thomas Jenkins in 1980 surveyed the west half of the east half of Lot 65 for the Stricklands. Jenkins determined that the east boundary of Lot 65 lay along the east section line of Section 12, in the center of Highway 98. He concluded that the Strickland property commenced 165 feet west of the east section line of Section 12, and placed comer markers around the property. The new corner markers were within inches of the old corner markers located by the Failes and Stricklands. Jenkins reasoned that the St. Andrews plat called for five-acre tracts, and the lots contained in Section 12 could constitute five-acre parcels only if lot lines were considered as extending to the center line of abutting streets. If the center line of the highway were considered the eastern boundary of the original Whitaker property, the east-west dimension of the property, minus 15 feet from the center of the road to the edge of the property, and another 29.59 feet conveyed to the state as right-of-way, was 120.41 feet. Appellant’s fence was more than 165 feet from the section line, and therefore west of the Whitaker and Hurst property.
Following hearings the trial court issued a final judgment finding that the northern boundary of the east half of the east half of Lot 65 measured 161.2875 feet, and that the east boundary line of Lot 65 was 15 feet west of the east section line of Section 12. The court therefore found that appellant’s fence encroached upon the east half of the east half of Lot 65 by approximately 10.2 feet. The court ordered appellant ejected from appellees’ property, and directed that it remove the fence.
In Smith v. Horn, 70 Fla. 484, 70 So. 435, 436 (1915), the court stated:
Where the owner of land has it surveyed, mapped, and platted, showing subdivisions thereof, with spaces for intervening streets or other highways between the subdivisions clearly indicated upon the map or plat, and conveyances in fee of the subdivisions are made with reference to such map or plat, the owner thereby evinces an intention to dedicate an easement in the streets or other highways to the public use as such, the title to the land under the street remaining in the owner or his grantees; and, where such conveyances are made with reference to the map or plat, the dedication of the easement for street purposes cannot be subsequently revoked as against the grantees, and the title of the grantees of subdivisions abutting on such streets, in the absence of a contrary showing, extends to the center of such highway, subject to the public easement, (emphasis supplied)
*260 We find no Florida cases applying this rule to the measurement of fractional portions of a lot abutting a street. Other jurisdictions are divided on the question. 12 Am. Jur.2d, Boundaries, s. 46 (1964), citing Earl v. Dutour, 181 Cal. 58, 183 P. 438 (1919); Rushing v. Sellers, 225 S.C. 173, 81 S.E.2d 281 (1954); Wegge v. Madler, 129 Wis. 412, 109 N.W. 223 (1906). In this case, the St. Andrews plat was not accompanied by any notes to indicate whether the measurement of the lots was to begin from the center of the dedicated streets. The plat depicts lot boundary lines as starting at the 15-foot easement boundary at the edge of the 30-foot wide streets. Testimony by the two surveyors indicated that in the past they have measured lots both from the center of the street and from the easement boundary.
The conveyances to Herbert and Mary Evelyn Whitaker, and to their predecessors in interest, J.N. and Vertie Faile, describe the property as:
The East Half (E ⅛) of the East Half (E ⅞) of a five acre tract Number Sixty Five (65) of Section 12, Township 4 South, Range 14 West, according to plat made by St. Andrews Bay Development Company....
No intent to include land other than that for private use is evident in the description. “Where ... the location of boundary lines is uncertain by reason of inconsistent or conflicting or otherwise ambiguous descriptive calls in the conveyance, the intention of the parties becomes the primary guide in locating the property boundaries.... ” 1 Fla.Jur.2d, Adjoining Landowners, s. 17 (1977). Based on the absence of any evidence of an intent by the original grantor, St. Andrews Bay Development Co., to make the center line of the streets the lot boundary lines, and on the succeeding conveyances to the Fades and the Whitakers, which show a similar absence of intent, the trial court would appear to have properly measured appellees’ parcel from the easement boundary rather than from the center of the street. The east-west dimension of the lot therefore would measure 645.15 feet, and the east half of the east half of the lot would measure 161.29 feet across. The distance from the center line to appel-lees’ west boundary line would therefore be 176 feet, and appellant’s fence, located approximately 165 feet from the center line of the street, would therefore lie within appellees’ property.
Although the foregoing analysis would place appellee Whitaker’s west boundary at the old fence, the record shows that appellees did not establish that fence as the boundary under a theory of acquiescence. See King v. Carden, 237 So.2d 26 (Fla. 1st DCA 1970). The evidence indicated that the Stricklands and Failes agreed that the fence was not the boundary line, but that two steel pipes east of the fence marked the true boundary. The Stricklands therefore believed that the boundary line was at the steel pipes. Mary Whitaker testified that Faile told her and her husband that the fence was the boundary line. She further testified that the Stricklands and Whitakers maintained their properties up to the fence for 30 years, but there was no agreement that the fence was to be considered the true boundary line.
We conclude the trial court did not err in finding that appellant’s fence encroached upon appellees’ property and framed relief accordingly.
AFFIRMED.
ERVIN and BOOTH, JJ., concur.