510 So.2d 327 (1987)
Robert Paul EVANS and Mygnon C. Evans, Appellants,
v.
William G. FORTE, Appellee.
No. 86-1030.
District Court of Appeal of Florida, Second District.
May 29, 1987.
Rehearing Denied July 30, 1987.
*328 Mygnon C. Evans, Lakeland, for appellants.
Donna Sumner Cox of Dayton, Sumner, Luckie & McKnight, P.A., Dade City, for appellee.
PER CURIAM.
The appellants, Robert Paul Evans and Mygnon C. Evans, appeal a final judgment in favor of the appellee, William G. Forte, in a declaratory action brought by the Evanses to establish the boundary lines for two disputed strips of land. We affirm.
One of the disputed strips of land is approximately fifteen feet wide and three hundred and fifty feet long and is located along a portion of the southern boundary of the Evanses' property which adjoins the northern boundary of Forte's property. Part of this strip is known as Southern Road. The other disputed strip is twenty-five feet wide, is located along the western boundary of Forte's property, and constitutes the east half of Forte Road. Forte Road is the only means of ingress and egress to the Evanses' property.
The testimony and evidence adduced at a nonjury trial revealed that in 1958 Joseph Herrmann purchased ten acres of land in Pasco County, Florida, for the purpose of subdividing the property and selling smaller parcels as homesites. The ten acres were described in an unrecorded plat as the east 660 feet of the west 990 feet of the N 1/4 of the NW 1/4 of Section 3, Township 25 South, Range 20 East. Herrmann hired Truby Hunt, a registered land surveyor, to make a survey and to plat the property dividing it into twelve lots with a road fifty feet wide through the middle of it. In *329 order to survey the property, Hunt needed to locate the northwest corner of Section 3.
Hunt testified that when he began trying to locate the corner, someone who lived nearby pointed out an "old lightwood post" and said it marked the corner. Hunt checked the government notes which indicated two pine trees. He found "two pine stumps that measured the distance and were at the right place for burying which we thought confirmed this was the proper location for the corner, and from there is where we begun the survey." Hunt testified further that the post was not old enough for the original government survey and that he had no idea who had put it there. Hunt put a concrete monument where the post had been and placed the post beside the concrete monument.
In addition to the concrete monument placed to mark the northwest corner of Section 3, Hunt also placed concrete monuments designating the corners of Herrmann's property. In addition, he placed concrete markers designating the corners of the fifty-foot wide road which the plat shows coming through the middle of the property. Herrmann testified that the purpose of the road was to give prospective purchasers access to their lots and that it was his intention to create a public road. This road eventually became known as Forte Road.
The plat Hunt prepared for Herrmann was never recorded. Herrmann testified, however, that he made a habit of furnishing a copy of the plat to every purchaser of the lots.
In 1960, Charles and Sally Legare, Forte's immediate predecessors in interest, purchased lots 2 and 4, the two northernmost lots on the eastern side of Forte Road. Prior to the time Forte purchased the Legare property in 1964, a fence was built, presumably by the Legares. The fence lined up with and connected the monuments placed by Hunt at the northeastern and northwestern corners of Lot 2. A fence was also constructed along the eastern side of Forte Road.
In 1971, the Evanses purchased property described in a mortgage deed as the E 1/2 of the SW 1/4 of the SW 1/4, the SW 1/4 of the SE 1/4 of the SW 1/4, the S 1/2 of the NW 1/4 of the SE 1/4 of the SW 1/4, and the S 1/2 of the NE 1/4 of the SE 1/4 of the SW 1/4 being in Section 34, Township 24S, Range 20E. Prior to purchasing the property, the Evanses learned that although Forte Road was maintained by the county, Herrmann apparently had never actually deeded the fifty-foot wide strip of property to the county. By warranty deed filed for record on January 28, 1971, Herrmann deeded to the Pasco County County Commissioners the west 25 feet of the NE 1/4 of the NW 1/4 of the NW 1/4 and the east 25 feet of the NW 1/4 of the NW 1/4 of the NW 1/4 of Section 3, Township 25 South, Range 20 East (Forte Road).
In 1980, Community State Federal hired Bobby Simmons, also a licensed land surveyor, to survey Forte's property. Simmons also used the northwest corner of Section 3 as the point of reference to begin his survey. (The northwest corner of Section 3 is the same as the southwest corner of Section 34 in which the Evanses' property is located.) Simmons testified, however, that he often had difficulty in proving the location of section corners with the government witnesses. He said, "Namely, in this particular instance, the land referred to in the government survey was first-rate pine timber; and the only two witnesses given to that particular point were two pine trees. Since it was surveyed in July of 1848, those pine trees have long since been gone." Simmons then explained how he had proved the corner by projecting from undisputed adjacent monuments and sectors. He further testified that he had done other surveys in that same section and had found no conflict with his initial determination of the true location of the northwest corner of Section 3. Hunt, on the other hand, had done no other surveys in the area after the one he did for Herrmann in 1958 and had not taken other measures to verify the correctness of his determination of the location of the northwest corner of Section 3.
After Simmons conducted his survey, Forte's father, who lived on the property, challenged the Evanses' right to use Forte Road for access to their property and alluded *330 to the possibility that they may have to buy their way onto their property. The Evanses filed a declaratory action seeking to have the boundary lines established along the fence lines on the north and west sides of Forte's property. The Hunt survey supported the establishment of the boundaries along the fence lines. On the other hand, the Simmons survey would extend Forte's northern boundary approximately fifteen feet into Southern Road and his western boundary twenty-five feet into Forte Road.
After considering the testimony and evidence adduced at trial, the trial court entered a final judgment finding that the credible evidence presented in the case supported Forte's contention that the Simmons survey denotes the correct placement of Forte's boundaries on the north and west, that the Evanses had failed to demonstrate their entitlement to relief by boundary by acquiescence, agreement or estoppel, and that the land Herrmann deeded to Pasco County is located immediately west of Forte's western property boundary. The Evanses timely filed notice of appeal.
We agree with the Evanses' contentions that a description of land and plats from field notes of an original government survey filed in the General Land Office is conclusive and that section lines and corners as laid down in the description are binding upon the general government and all parties concerned. St. Joe Paper Co. v. Gulf Mosquito Control District, 125 So.2d 895 (Fla. 1st DCA 1961). Here, however, there was some dispute as to whether Hunt's determination of the location of the northwest corner of Section 3 had in fact been based on the original government survey. Both Hunt and Simmons had referred to the field notes of the original survey in attempting to prove the northwest corner of Section 3. While Hunt relied on what he believed to be the two pine stumps referred to in the field notes, Simmons explained why he found these particular "government witnesses" unsuitable for proving the corner in this situation.
We believe that Simmons's explanation of why he found the pine stumps to be unreliable was sufficient to cast doubt on the validity of Hunt's use of the two pine stumps in proving the corner. The question of which of the two conflicting surveys denoted the correct placement of Forte's boundaries on the north and west, therefore, became a factual determination for the trial court. See Aspinwall v. Gleason, 97 Fla. 869, 122 So. 270 (1929). As there was substantial, competent evidence supporting the validity of the Simmons survey, we find no error in the trial court's determination that the Simmons survey denoted the correct placement of Forte's northern and western boundaries.
We also find no error in the trial court's holding that the Evanses had failed to establish boundary by acquiescence, agreement, or estoppel. The necessary elements to be proved in order to establish a boundary by agreement or acquiescence are: (1) uncertainty or dispute as to the location of the true boundary line; (2) an agreement by the parties that a certain line will be treated as the true boundary line; and (3) the subsequent occupation of both properties according to such line as the true boundary. See Brooks v. Fletcher, 393 So.2d 630 (Fla. 4th DCA 1981); see also, Shaw v. Williams, 50 So.2d 125 (Fla. 1950). Moreover, the burden of proving the necessary elements is on the party claiming that a boundary has been established by agreement or acquiescence. Shaw. Here, there is no evidence of any uncertainty or dispute as to the property line which divides the Evanses' property from Forte's property on the northern boundary of Forte's property before Simmons conducted the survey in 1980. The first element, therefore, clearly has not been established as to the northern boundary line of Forte's property.
As to the western boundary of Forte's property, there is testimony that when Joseph Herrmann sold the lots on the west side of Forte Road to his grandson, Michael Herrmann, in 1977, Forte's father challenged Michael's right to use Forte Road to get to his property. Joseph Herrmann showed the elder Forte the deed by which he had conveyed Forte Road to the *331 county in 1971. After that Michael had no further problem using the road. We do not find, however, that this confrontation satisfies the dispute or uncertainty element required for boundary by agreement or acquiescence. Even if the dispute regarding Michael's right to use the road could be construed as indicating an uncertainty or dispute as to the boundary line, the dispute was between Joseph and Michael Herrmann and Forte's father, not Forte himself who is the appellee here and the owner of the property adjoining Forte Road. An agreement, if any, between the Herrmanns and Forte's father, who simply lived on the property, is not valid to bind the true owner of the property to a boundary line which he may or may not have been aware was in dispute. Furthermore, according to the Simmons survey, the twenty-five feet immediately west of Forte's west fence was not Joseph Herrmann's to convey in 1971 as the property was initially purchased from Herrmann in 1960 by the Legares.
As to boundary by estoppel, although the Evanses describe various improvements they made to their property, there is no indication that any of the improvements are in fact on the disputed strip along their southern boundary. There is, therefore, no evidence of detrimental reliance, especially reliance that was actively or passively induced by Forte. Furthermore, although Forte Road is the Evanses' only means of ingress and egress to their property, the southern boundary of the Evanses' property extends westward for some distance beyond Forte's northern boundary, even when Forte's western boundary is extended to include the additional twenty-five feet indicated by the Simmons survey. Also, the evidence produced at trial indicated that although Herrmann had intended to set aside fifty feet for the road, only fifteen feet was actually being used for a roadway. The Evanses' property, therefore, will not be land locked under the ruling of the trial court.
The Evanses also cite DeRoche v. Winski, 409 So.2d 41 (Fla. 2d DCA 1981), for the proposition that when a common grantor of adjacent parcels of property has established a dividing line between them with the knowledge and consent of the grantees of the respective parcels, and the grantees go into possession and observe that boundary line for an extended period of time, that line becomes binding between those grantees and their successors in interest and cannot be changed. We find, however, that this principle cannot be applied to benefit the Evanses with regard to Forte's northern boundary because there was no common grantor as to Forte's property and the Evanses' adjoining property. As to Forte's western boundary, Hunt's placement of the concrete monuments could be construed as an attempt to designate the inner boundaries of the lots platted. There was no direct evidence, however, that these monuments were placed there at Herrmann's direction or that these monuments were pointed out to the purchasers as designating the boundary lines. Hunt's testimony regarding the placement and purpose of the monuments indicated that his memory was less than clear regarding the circumstances surrounding the placement of these other monuments. The trial court, therefore, after considering the credibility of the evidence submitted to it, obviously determined that the Evanses had not carried their burden of proving that the principle enunciated in DeRoche should be applied in this case.
For all the above reasons, we find no error in the trial court's ruling and, therefore, affirm its final judgment in all respects.
Affirmed.
SCHOONOVER, A.C.J., and LEHAN and SANDERLIN, JJ., concur.