842 So.2d 1003 (2003)
SEMBLER MARINE PARTNERS, LTD., Appellant,
v.
Robert J. SKIDMORE, Inc., Angler's Obsession Commercial Fishing Corp., and Reason, Light & Truth Church Foundation, Appellees.
No. 4D01-4718.
District Court of Appeal of Florida, Fourth District.
April 16, 2003.
*1004 Christopher J. Coleman of Schillinger & Coleman, P.A., Melbourne, for appellant.
Neal A. Sivyer and R.J. Haughey, II of Sivyer Barlow & Watson, P.A., Tampa, for Intervenor Presidential Financial Corporation.
WARNER, J.
By declaratory judgment the trial court established a boundary by acquiescence between property owned by appellant and appellee. Appellant challenges the trial court's ruling, claiming that there was insufficient evidence of any mutual uncertainty of the boundary or any agreement as to a boundary line. We conclude that the evidence showed both uncertainty and disagreement, as well as appellant's passive acquiescence to the boundary for the prescriptive period. We therefore affirm the final judgment.
Charles Sembler ("Sembler") inherited property located in Indian River County along the west side of the Indian River from his grandfather. He walked the property with his grandfather who showed him the boundaries. Sembler later transferred the property to appellant, Sembler Marine Partners, Ltd. ("Sembler, Ltd.").
Robert J. Skidmore, Inc. ("Skidmore") acquired the property adjacent to Sembler's. Sometime in the 1940's, a structure was constructed on Skidmore's property. In 1963, a tenant on the Skidmore property constructed an addition to the structure by adding or extending an outdoor cooler. At the time, Sembler testified that he told the tenant, a friend, that the addition was "very close to the [property] line."
In 1983, Sembler, Ltd. obtained a survey of its property in connection with a loan transaction. The survey, known as the Allen survey, located the boundary between the Sembler, Ltd. and Skidmore parcels in accordance with monuments constituting some iron pins. This was consistent with the boundary of the property as described in its legal descriptions as well as the lines of occupation, as found by the trial judge. The boundary line established by the Allen survey was approximately fourteen feet from the structure on Skidmore's property.
Skidmore did not have a survey conducted prior to the purchase of his parcel because the Allen survey had recently been prepared. Shortly after he purchased the property, he walked it with Sembler who pointed out an iron pipe as the northwest corner of their common boundary. Drawing an imaginary line from the pins to the river bank, the boundary Sembler pointed out would have been about ten feet north of the structure, very close to the Allen survey line. Sembler, Ltd. discussed purchasing Skidmore's property, but instead leased it for five thousand dollars.
In 1990, while Sembler, Ltd. was leasing Skidmore's property, it obtained another survey of the property, known as the Jackson survey. This survey placed the parties' common boundary approximately seventeen feet south of the Allen survey boundary. According to the Jackson survey, the structure on the Skidmore property encroached on Sembler, Ltd.'s property. Harry Underhill, the general partner of Sembler, Ltd., raised the issue of the encroachment with Skidmore who disagreed with the Jackson boundary. Despite the favorable Jackson survey, Sembler, Ltd. failed to take any action until filing this suit for declaratory judgment and to quiet title eight years later.
After hearing the evidence, the trial court found that while the Jackson survey appeared to be more technically correct *1005 than the Allen survey, the parties and their predecessors had acquiesced in the location of the building and the assumed boundary in excess of forty years. It therefore declared the Allen survey of 1983 established the boundary between the Sembler, Ltd. and Skidmore parcels.
Three essential elements must be proven to establish a boundary by acquiescence: (1) uncertainty or dispute as to the location of the true boundary; (2) location of a boundary line by the parties; and (3) acquiescence in the location for the prescriptive period. See Shaw v. Williams, 50 So.2d 125, 126 (Fla.1950); DuBois v. Amestoy, 652 So.2d 919, 920 (Fla. 4th DCA 1995). Moreover, "uncertainty means actual lack of knowledge on the part of both owners as to the true boundary" and must be mutual as to both property owners. Shaw, 50 So.2d at 127-28. Shaw explains that the boundary line so agreed becomes binding "for the reason that the proprietors have by such consent and conduct agreed permanently upon the limits or the extent of their respective lands." Id. at 127 (quoting Watrous v. Morrison, 33 Fla. 261, 14 So. 805, 807 (1894)). It also teaches that "[p]assive acquiescence may forfeit one's right to dispute a boundary, but to do so, it must follow knowledge of the location of the line by the adverse party." Id. at 128.
The evidence presented in this case satisfies the elements of boundary by acquiescence. Sembler was uncertain as to the location of the boundary as early as the 1960's when he expressed concern that Skidmore's tenant was constructing the structural addition very close to the property line. Although appellant cites Evans v. Forte, 510 So.2d 327 (Fla. 2d DCA 1987), for the proposition that a dispute between an owner and tenant as to a boundary line is insufficient to demonstrate the true owner is also uncertain, this proposition protects an owner uninvolved in, and unaware of, his tenant's dispute. 510 So.2d at 330-31. Here, the owner was Sembler, and the testimony regarding his conversation with the tenant reflects Sembler's uncertainty, not that of the owner of the other parcel. Moreover, Sembler later showed Skidmore a boundary line consistent with the Allen survey. Also, Sembler, Ltd. leased the Skidmore property, including the structure which encroached on the Jackson boundary line, demonstrating its acceptance of the Allen survey as establishing the correct line.
Finally, there is also evidence of dispute as to the boundary line. In 1990, Sembler, Ltd. obtained the Jackson survey and raised the issue of the true boundary with Skidmore who refused to accept that boundary. This established a dispute. For a period of eight years, Sembler, Ltd. passively acquiesced to the Allen boundary recognized as the boundary by both Skidmore and Sembler since the mid-1980's. Skidmore's building encroached onto the property now claimed by Sembler, Ltd., yet Sembler, Ltd. took no action for the prescriptive period of seven years. See § 95.12, Fla. Stat. (1975). Prior to the institution of these proceedings, Skidmore transferred his property to appellee, Reason, Light and Truth Church Foundation, which made improvements, including repair to the riprap along the river's edge of the disputed parcel, without Sembler, Ltd. indicating that it had any claim to it. We conclude that the trial court had sufficient evidence to find a boundary by acquiescence at the Allen survey line, even where it concluded that the Jackson survey was technically more correct.
Affirmed.
STONE and GROSS, JJ., concur.